This is an appeal from an order issued by the Marshall County Circuit Court enjoining Sand Mountain Bank from maintaining and operating an automated teller machine (ATM) and night depository within the corporate limits of Albertville, Alabama.
Defendant, Sand Mountain Bank, is a state bank. Its principal offices are maintained in Boaz. In March and April 1980, Sand Mountain Bank filed applications with the Federal Deposit Insurance Corporation (FDIC) and the Superintendent of Banks for the State of Alabama, respectively, seeking permission to establish an ATM in the Food World Supermarket located on U.S. Highway 431 North. This location is approximately one mile inside the Albertville city limits. Both applications for establishment of the ATM were approved.
In July 1980, Sand Mountain Bank again filed applications with the FDIC and the Superintendent of Banks, seeking permission to install a separate night depository safe adjacent to the ATM. The applications were approved and on July 31, 1980, the ATM and night depository ("combined facility") were placed into operation.
Plaintiffs, Albertville National Bank and First State Bank of Albertville, filed an action in circuit court to enjoin the maintenance and operation of the combined facility. Plaintiffs complained that operation of the combined facility was in violation of Act No. 303, Acts of Alabama 1973. The circuit court agreed and issued the injunction from which defendant now appeals.
Act 303 is a local act applicable only to Marshall County. The purpose of this Act is to allow branch banking and other related banking activity within the county under specific conditions. The pertinent language of the Act provides:
 "Section 2. Any bank, either incorporated or unincorporated, within the State, now or hereafter having a combined paid in capital and paid in or earned surplus *Page 15 
of at least $200,000, and situated in such County or having an office or place of business in said County, shall have power to establish, to maintain and operate within the limits of such County, where the principal place of such business of such bank is situated or where it has an office or place of business, one or more branches or branch banks, branch offices, branch agencies, additional offices, or branch places of business, for the receipt of deposits, payment of checks, lending of money and conduct of a general banking business, provided that such bank, before the establishment of any such branch or branches or additional offices or places of business, shall first secure the written consent thereto of the State Superintendent of Banks. It is provided further that no bank shall establish, maintain and operate such a branch within any incorporated municipality in the county in which a bank is already established, other than the municipality in which its principal place of business is situated, or in which it has a branch or authorized place of business."
(Emphasis added.) The circuit court enjoined the operation of Sand Mountain Bank's ATM and night depository, holding that the combined facility is a branch place of business within the terms of the Act capable of receiving deposits, transferring accounts, receiving payments on notes, making change, and giving limited amounts of cash and that its operation in Albertville is in violation of the Act. Defendant seeks to have the judgment of the circuit court reversed and presents three issues, each of which will be discussed.
The first issue is whether the combined facility constitutes a "branch place of business" under Act 303. We need not examine whether the combined facility is a "branch bank."[1] The language of Act 303 specifically refers to the establishment of "branch banks, branch offices, branch agencies, additional offices, or branch places of business, for the receipt of deposits, payment of checks, lending of money and conduct of a general banking business." The circuit court did not decide whether the combined facility was a "branch bank" under the Act, and this question is not properly before the Court.
In determining whether the combined facility is a branch place of business, we must examine whether the Act's definition of "branch place of business" is fulfilled. The functions listed in the Act are the receipt of deposits, the payment of checks, the lending of money, and the conduct of a general banking business.
Undoubtedly, one of the functions of the combined facility is the receipt of deposits. Built into the ATM itself is a depository. Customers of Sand Mountain Bank can make deposits, large or small, commercial or personal, by slipping them into the ATM depository. Customers may specify whether *Page 16 
the deposit is to be credited to their checking or savings account. This depository function is in addition to the night depository adjacent to the ATM which was installed to permit acceptance of deposit bags too large for the ATM.
A second required function listed in Act 303 which the ATM is capable of performing is the lending of money. Aside from making application for an Anytime Teller Card, a bank customer may apply for a Check OK Card. The Check OK plan allows a customer to establish a line of credit with Sand Mountain Bank and then continue to make withdrawals against an insufficient checking account balance. Any money withdrawn against the insufficient account balance is considered a loan. It is carried on the monthly bank statement as an outstanding loan, and the bank requires monthly repayments and charges interest. Bank customers can also obtain cash advance loans against their Visa or Master-Card line of credit by using specially encoded cards issued through Sand Mountain Bank. These loans are repayable to Visa or Master-Card and not to the bank. Although the card holder can only receive a maximum of $100 per day, the ability of the ATM to lend funds is unquestionable. Of course, ATMs can be programmed to permit withdrawals much larger than $100.
Whether the ATM is capable of performing the check payment function required under the Act is a more difficult issue. We understand that modern technology has not yet advanced to the stage where an unmanned machine can be programmed to cash a handwritten paper check. This does not, however, resolve the issue. The case of Illinois ex rel. Lignoul v. ContinentalIllinois National Bank and Trust Co., 536 F.2d 176 (7th Cir.),cert. denied, 429 U.S. 871, 97 S.Ct. 184, 50 L.Ed.2d 151
(1976), addressed the issue of whether or not a customer-bank communication terminal (ATM) was capable of cashing a check. We quote with approval from the opinion delivered in that case:
 "[T]he district court concluded that a card inserted into the [ATM] machine to secure money was not the cashing of a check within the meaning of U.C.C. or in the common understanding of check cashing. We cannot agree. As was said in [Independent Banks Association of America v. Smith, 534 F.2d 921 (D.C. Cir.), cert. denied, 429 U.S. 941, 97 S.Ct. 166, 50 L.Ed.2d 141
(1976)] this `is exalting form over substance — exactly what the Supreme Court instructed us not to do' in First National Bank v. Dickinson (Plant City), 396 U.S. 122 at 137, 90 S.Ct. 337 [at 345], 24 L.Ed.2d 312 (1969). The check is merely the means used by the bank to attain the desired objective, i.e., the payment of the money to its customer. The card serves the same purpose as the check. It is an order on the bank. Any order to pay which is properly executed by a customer, whether it be check, card or electronic device, must be recognized as a routine banking function when used as here. The relationship between the bank and its customer is the same. . . . Just as a transfer of funds by cable or telegraph is in law a check, Louie v. Chase National Bank, 42 N.Y.S.2d 205 (Sup.Ct.N.Y.Co. 1943), despite the non-negotiability of the cable, the card here for the purpose of withdrawing cash is a check. What must be remembered is that the foundation of the relationship between the bank and its customer is the former's agreement to pay out the customer's money according to the latter's order. See, White and Summers, Uniform Commercial Code 1972 at 551. There are many ways in which an order may be given and one of late is by computer record."
536 F.2d at 178.
The receipt of deposits, payment of checks, and lending of money are all considered conduct of a general banking business. § 5-5A-18, Code 1975 (1981 Repl.Vol.). In addition to the named functions which we have concluded the ATM is capable of performing, the Act specifically requires "conduct of a general banking business." The requirements of Act 303 are conjunctive; hence, the ATM must be capable of performing activities other than *Page 17 
those already discussed. We feel the ATM satisfies all requirements. Aside from the ability to receive deposits, make payment on checks, and lend money, the ATM can transfer funds between accounts, make payment on loans, and make change. These activities can all be considered conduct of a general banking business. The fact that the ATM is not programmed or capable of performing certain activities which might normally be thought of as general banking business does not affect our decision because, as the circuit court noted, "all banks do not involve themselves in all the business allowed by law."
The second and third issues which defendant presents to this Court are quite similar. Defendant contends that whether or not the combined facility constitutes a branch place of business under Act 303, its operation is permissible nonetheless by virture of § 5-2A-7, Code 1975 (1981 Repl.Vol.), and the Electronic Fund Transfer System (EFTS) Regulations promulgated by the Superintendent of Banks pursuant thereto and that to the extent Act 303 is inconsistent with § 5-2A-7 and the EFTS Regulations, Act 303 is repealed by implication.
The Code provision, § 5-2A-7, which defendant contends authorizes the operation of the combined facility in Albertville, is part of the newly adopted Alabama Banking Code.[2] Relevant portions of § 5-2A-7 read as follows:
 "(a) The legislature finds as fact and determines that the financial industry composed of those banks, savings and loan associations and credit unions having their principal place of business in Alabama must keep pace with technological and other improvements constantly being made throughout the United States so as to enable Alabama banks, savings and loan associations and credit unions to render better and more efficient services to the citizens of Alabama. It is necessary and desirable that the superintendent be given additional authority in these fields.
 "(b) The superintendent is hereby authorized to expand banking powers of Alabama banks or the powers of Alabama savings and loan associations or the powers of Alabama credit unions in order to:
 "(1) Accommodate or take advantage of changing technologies; and
 "(2) Assure the ability of Alabama banks, Alabama savings and loan associations and Alabama credit unions to be responsive in their respective businesses to the needs and conveniences demanded by consumers and businesses through on-premises as well as off-premises operations; provided, that nothing in this section shall enable the superintendent to authorize banks to engage in activities which are not properly incident to the business of banking nor to enable the superintendent to authorize savings and loan associations or credit unions to engage in the business of offering financial services which are now prohibited to them.
". . . .
 "(c) The superintendent is authorized to issue regulations under subsection (b) and shall give notice in writing of any such proposed regulation to each Alabama bank."
Pursuant to authority granted in what is now § 5-2A-7, the Superintendent of Banks, in 1976, promulgated the EFTS Regulations. The Regulations provide in part:
"2. PURPOSE
 "The purpose of these regulations is to permit an orderly development of off-premise electronic funds transfer systems in the State of Alabama, for financial institutions domiciled within the state to serve their customers more effectively and efficiently, and for the market *Page 18 
place to determine the growth and development of off-premise electronic funds transfer systems rather than by regulation. Unnecessary regulation which well might prevent the developing electronic fund transfer system from achieving its maximum potential is not intended. The primary purpose of these regulations is to remove any potential legal barriers and to regulate only to prevent unwise ventures and injury to the public interest. No financial institution is authorized to offer or provide additional or new services or is granted powers by virtue of these regulations that were not previously permitted.
". . . .
 "7. CRITERIA FOR APPROVAL BY SUPERINTENDENT OF BANKS
 "The criteria for approval to be used by this office for participating in, owning, or operating any type of electronic fund transfer system shall be whether such system would promote the public convenience and needs, whether sound competition would result, whether proper consumer protection measures and procedures have been established, and the impact on earnings and capital of the applicant. There will be no population or distance criteria applied to EFTS applications."
(Emphasis added.)
Defendant argues that the statutory directive of § 5-2A-7, in conjunction with the subsequent issuance, by the Superintendent of Banks, of the EFTS Regulations, indicates a legislative desire that growth and development of off-premise electronic funds transfer systems, in particular ATMs, be controlled by conditions in the marketplace rather than by statutory regulation. Evidence of this, defendant says, is the reenactment in 1980, four years after the EFTS Regulations were issued, of the Code provisions authorizing the Superintendent of Banks to expand banking powers in Alabama without any substantial change which would affect the Superintendent's prior interpretation of the provision.
While defendant's assertion is true that reenactment of a statute without material change may be considered as legislative approval of departmental construction, such construction nonetheless is not binding upon a court. Haden v.McCarty, 275 Ala. 76, 79, 152 So.2d 141, 143 (1963). An administrative interpretation of long standing is normally entitled to favorable consideration by the courts, but ". . . this rule of construction is to be laid aside where it seems reasonably certain that the administrator's interpretation has been erroneous and that a different construction is required by the language of the statute." Boswell v. Abex Corp., 294 Ala. 334,336, 317 So.2d 317, 318 (1975). The Superintendent's construction of § 5-2A-7, which construction authorizes the operation of defendant's combined facility in Albertville, is clearly erroneous when considered in conjunction with local Act 303 and § 5-5A-20, Code 1975 (1981 Repl.Vol.), another general provision of the Alabama Banking Code.
In construing a statute, a court must look not only to the language of the statute, but also to the purpose and object of the enactment and its relation to other laws. Siegelman v.Folmar, 432 So.2d 1246, 1249 (Ala. 1983). Section 5-5A-20, Code 1975 (1981 Repl.Vol.), provides:
 "No bank, or any officer, agent or director thereof shall be permitted to establish a branch or office for the transaction of the banking business other than at its principal place of business, in any county in this state, except as has been heretofore or which may hereafter be provided by local laws or general laws of local application. All existing branch banks are hereby validated."
By statute, the Alabama legislature has clearly established a policy to prohibit a bank from establishing a branch or office to transact banking business other than at its principal place of business, except as is provided by local laws or general laws of local application. Local Act 303 prohibits the operation of defendant's combined facility in Albertville, and the general language of § 5-2A-7 cannot be construed to authorize its operation, in light of the legislative *Page 19 
policy to prohibit such facilities except as is provided by local laws or general laws of local application. This would also be in keeping with the prohibition of § 2 of the EFTS Regulations that "[n]o financial institution is authorized to offer or provide additional or new services or is granted powers by virtue of these regulations that were not previously permitted." Furthermore, the stated purpose of § 5-2A-7 and the EFTS Regulations will not be frustrated by a finding that Act 303 prohibits the operation and maintenance of defendant's combined facility in Albertville. Such a finding would not interfere with defendant's operation of other ATMs and night depositories in Marshall County as long as the provisos of Act 303 are complied with.
Finally, defendant, citing § 5-1A-6, Code 1975 (1981 Repl.Vol.), argues that inasmuch as § 5-2A-7 and the EFTS Regulations are inconsistent with Act 303, the latter is repealed. Section 5-1A-6 reads "[I]nsofar as the provisions of chapters 1A through 12A of [the Alabama Banking Code] are inconsistent with the provisions of any other law, general or special, the provisions of chapters 1A through 12A . . . shall be controlling." The decisions by this Court are in agreement with the statement by Professor Sands that "an express general repealing clause to the effect that all inconsistent enactments are repealed, is in legal contemplation a nullity." 1A C. Sands, Sutherland Statutory Construction, § 23.08 (4th ed. 1972). As we said in Ex parte Jones, 212 Ala. 259, 102 So. 234
(1924),
 "Such a general repealing clause . . . does not operate as a repeal of any of the provisions of the [previous act], unless in conflict therewith. As said by this Court in Ogbourne v. Ogbourne, 60 Ala. 616, `It is merely a legislative declaration of the necessary effect of the act, if the clause had not been inserted.' If, therefore there is a repeal, it is by implication, and it is well established that repeal by implication is never favored by the court."
212 Ala. at 261, 102 So. at 235.
If the situation arises, as is alleged here, that provisions of a general law applicable to the entire state are in conflict with provisions of a previously enacted special law applicable only to a particular locality, the general law will not operate to repeal the special law, "unless repeal is provided for by express words or arises by necessary implication." Vaughan v.Moore, 379 So.2d 1240, 1241 (Ala. 1980). If under a reasonable construction it is possible to reconcile the acts, both will be given effect. Ex parte Jones, 212 Ala. at 261, 102 So. at 235;Siegelman v. Folmar, 432 So.2d at 1249. As discussed earlier, Act 303 and § 5-2A-7 can be reconciled and a field of operation given to each. The effect of § 5-2A-7 is not the repeal of Act 303.
In review, we are of the opinion that the combined facility installed by defendant, Sand Mountain Bank, in the Food World Supermarket located within the corporate limits of Albertville is at the least a "branch place of business, for the receipt of deposits, payment of checks, lending of money and conduct of a general banking business." As such, its operation is in violation of the provisions of Act No. 303, Acts of Alabama 1973, which we find to be controlling, and is prohibited. Therefore, the judgment of the circuit court is due to be, and it is hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, ALMON, EMBRY and BEATTY, JJ., concur.
MADDOX, FAULKNER, SHORES and ADAMS, JJ., dissent.
[1] The defendant argues that the combined facility is not a "branch bank" for purposes of the Act. Even if we were to reach this argument, we would face an uncertain issue. Although several Code provisions, §§ 5-5A-20, 5-5A-32, 5-7A-45, Code 1975 (1981 Repl.Vol.), refer to branch banks and over eighty local laws and general laws of local application pertain to authorization or restriction of branch banking, we are not aware of any Alabama case which has legally defined the term "branch bank." Even so, the pertinent provisions of Act 303 use much of the same language of the federal statutes. The fact that Act 303 adds some additional language concerning the conduct of a general banking business cannot lead to an interpretation different from federal standards, absent some indication of contrary legislative intentions.
Federal law defines a branch bank as "any branch bank, bank office, branch agency, additional place of business . . . at which deposits are received, checks paid, or money lent."12 U.S.C. § 36 (f) (1976). See also 12 U.S.C. § 1813 (o) (1976) (FDIC definition). Under the federal definition, ATMs have been held to be branch banks. State Bank of Fargo v. Merchants Nat'lBank Trust Co., 593 F.2d 341 (8th Cir. 1979); Missouri exrel. Kostman v. First Nat'l Bank, 538 F.2d 219, cert. denied,429 U.S. 941, 97 S.Ct. 357, 50 L.Ed.2d 310 (1976); Illinois exrel. Lignoul v. Continental Ill. Nat'l Bank Trust Co.,536 F.2d 176, cert. denied, 429 U.S. 871, 97 S.Ct. 184,50 L.Ed.2d 151 (1976); Independent Bankers Assoc. of Am. v. Smith,534 F.2d 921, cert. denied, 429 U.S. 862, 97 S.Ct. 166,50 L.Ed.2d 141 (1976).
[2] The statute was originally codified as Code 1975, §§ 5-1-37 through 5-1-39. In 1980 these sections were, with only minor changes not pertinent here, combined and reenacted as part of the newly adopted Alabama Banking Code, 1980 Ala. Acts. No. 658, § 5-2A-7, Code 1975 (1981 Repl.Vol.). *Page 20