A jury found in favor of James Henry Lindsey in his personal injury and property damage action against Aurelia M. Marcus, an uninsured motorist. The trial court entered an $11,500 judgment on the jury verdict against the defendant, who then filed this appeal.
We have reviewed the record and studied the parties' briefs. The jury verdict is not contrary to the great weight of the evidence; it is supported by the evidence, for the jury could have found from the evidence that the defendant was driving while intoxicated, ran a stop sign, and hit Lindsey's automobile, proximately causing Lindsey to be personally injured and Lindsey's automobile to be damaged.
There was legal evidence of personal injury and property damage sufficient to sustain the jury's verdict. A party claiming damages has the burden of establishing by competent evidence the existence of an entitlement to damages and the amount of those damages. Segars v. Reaves, 567 So.2d 249 (Ala. 1990). A plaintiff can testify to what his injuries are, so long as his testimony is based on facts and does not present medical conclusions or opinions that require expert testimony.Central of Georgia Ry. v. Clements, 2 Ala. App. 520, 57 So. 52
(1911). Lindsey testified that after the accident he had suffered headaches that he had not suffered before the accident (his head hit and "busted" the windshield in the accident). A plaintiff in a personal injury action may testify to physical pain suffered from, and as a result of, his injuries. Elba Wood *Page 1047 Products, Inc. v. Brackin, 356 So.2d 119 (Ala. 1978). Lindsey testified that because his left shoulder was injured in the accident, he was limited in using his left hand for doing such things as carrying buckets of hog feed; Lindsey raised hogs, and carrying buckets of feed was a daily chore for him both before and after the accident.
 "In case of an injury [a person not a physician or a medical expert] may state the facts, his symptoms, etc.; but he cannot, as a rule, state that such injuries resulted in some particular disease to some organ not actually injured. In the present case, it was entirely permissible for [the plaintiff] to state that the rib of an umbrella stuck into his chest, that his hands were bruised, his fingers and ribs broken, and his hips injured, and it was also permissible for him to say that after that time he had suffered from a cough and a sore throat. . . ."
Central of Georgia Ry. v. Clements, 2 Ala. App. at 523,57 So. at 53 (emphasis original).
The defendant complains of Lindsey's quoting the opinion of an orthopedic surgeon, contending that this was "highly prejudicial, inflammatory, and damaging to the Defendant's case" and was "irrelevant, illegal, and immaterial." We need not address this issue, because the very testimony that the defendant objects to was elicited by the defendant's attorney from Lindsey:
 "Q. [Defendant's attorney]: I'll ask you if — I'll show you this. On page 17 of your deposition referring to some questions by myself and O'Bannon on your deposition. Question: 'Did he say whether or not that poor circulation was related to the accident or a problem that you had beforehand.' Answer: 'He said he felt like it was related. I never had no problem before I had the accident.' And then my question, 'In other words, Dr. O'Brien told you you had poor circulation in the left arm and you told him you hadn't had any problem with it before you[r] accident? No, sir, I hadn't had any problems. Did he say to you, well, it must be related or did he say it might be related or did he say anything at all?' Answer: 'He didn't say.' Is that what you told on your deposition?
"A. Yes, sir.
 "Q. Well, he didn't say it was related, did he? He never did say it was related to the accident, did he?
"A. No, sir."
The jury verdict was as follows:
 "We, the Jury, find in favor of [Lindsey] and against the Defendant . . . and assess [Lindsey's] damages at $25,000. "Car $1,500."
The trial court ascertained that the total verdict was $26,500 and that $15,000 in uninsured motorist benefits that had been paid to Lindsey by his uninsured motorist insurance carrier in a pro tanto settlement had not been deducted from that amount. At the request of the defendant, the jurors were individually polled as to whether $11,500 was the amount of the jury verdict in favor of Lindsey and against the defendant. Each juror responded that that was his or her verdict. There was no objection by the defendant to any of this. There is nothing for this Court to review.
The defendant objected to the following portion of the trial court's oral charge:
 "If you're reasonably satisfied from the evidence that [Lindsey] is entitled to recover in this case then in arriving at an amount of damages to be awarded to the Plaintiff you will determine from the evidence the total amount of damages suffered by the Plaintiff and then give credit for the amount of $15,000.00 which the Plaintiff has already been paid by Cotton States Insurance Company and render a verdict for the Plaintiff for the balance remaining. However, this release of Cotton States Insurance Company does not diminish Plaintiff's claim for automobile damages."
The defendant's objection was predicated upon the claim that it was a jury issue as to whether any of the money paid by Cotton States Insurance Company could diminish *Page 1048 
Lindsey's claim against the defendant for the damage to Lindsey's automobile. Lindsey had sued Cotton States to recover uninsured motorist benefits. The defendant does not cite any authority to support his argument. Uninsured motorist coverage normally does not cover property damage. There is nothing in the record to indicate that it did in this case. There was evidence in the record to support a $2,450 property damage verdict; the amount awarded for property damage did not exceed that amount. The trial judge did not err in her oral charge to the jury.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and KENNEDY, JJ., concur.