**In re Neal L. CROTZER, Jr., Mary L. Crotzer, Debtors.**

**Bankruptcy No. 91–73325.**

United States Bankruptcy Court, N.D. Alabama, W.D.

Nov. 10, 1992.

Steven D. King, Birmingham, Ala., for debtors.

Finis E. St. John, Cullman, Ala., for creditor—Walker Builders, Inc.

C. Michael Stilson, Tuscaloosa, Ala., Chapter 13 Standing Trustee.

## MEMORANDUM OF DECISION

GEORGE S. WRIGHT, Chief Judge.

This matter came before the Court on motion of Plaintiff/Debtor Neal L. Crotzer, Jr. to dismiss the claim filed by defendant/creditor Walker Builders, Inc. The court has reviewed the evidence and arguments presented by both parties. The debtors' objection is due to be sustained in part and overruled in part.

## FINDINGS OF FACT

On July 20, 1981, the debtor and creditor entered into a mortgage agreement. The mortgage agreement provided the debtor with $35,000 to pay for supplies and labor to build a home. In return, the agreement provided the creditor a note secured by a mortgage on the debtor's property in Walker County as described in the mortgage. The agreement provided for a 16 percent interest rate and a payment schedule of 240 monthly installments of $486.94, beginning on September 20, 1992. (Doc. 8) The Crotzers contend in their objection to claim that the mortgage agreement between them and Walker violates the consumer finance section (Chapter 19 of Title 5) of the *Alabama Code*, also known as the Mini–Code.

*Ala.Code* § 5–19–6 (1975)[1] requires a cautionary statement to appear immediately above the space for the borrower's signature. *Ala.Code* § 5–19–4[2] limits the

---

**1.** *Ala.Code* § 5–19–6 provides:

Any creditor, when extending credit with respect to a consumer credit sale, loan or lease other than open-end credit, shall at that time furnish to the debtor duplicate copies of all instruments executed by the debtor in connection with the transaction. The credit sale contract, loan note or lease shall contain the following statement in eight point type immediately above the space for the borrower's signature.

"CAUTION—IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT."

**2.** *Ala.Code* § 5–19–4(a) provides:

When a scheduled payment is in default 10 days or more, the creditor may charge and collect a late charge *not exceeding five percent of the amount of such scheduled payment* in default, *or of $.50 on each such scheduled payment* in

amount of charges on late payments to five percent of the scheduled payment or 50 cents, whichever is greater.

The copy of the Crotzers–Walker Builders, Inc. ("WBI") mortgage agreement provided to the court does not contain any cautionary statement as set out in the Mini–Code at Section 5–19–6. (Doc. 8). In the March 19, 1992 court proceedings on this motion, WBI's representative conceded that the mortgage agreement did not include a cautionary statement.

The Crotzers provided records showing that WBI charged late fees of more than five percent of the payment or 50 cents on 31 of the 45 times the late fees were charged. (See Doc. 13, Exhibit C). According to the court's computation, payment records indicate that the Crotzers paid between 10 and 13–percent–of–payment late charges between May of 1982 and November of 1988. These late charges total $1,608.89. Beginning with a late payment in February of 1990, the late charge drops back to $25.60 per payment, or five percent of the payment due. WBI also conceded these charges were as the debtor contended at hearing March 19, 1992.

The creditor, however, argued that Crotzer had not proven WBI was a creditor as defined in the Mini–Code, Section 5–19–1(3)³, as of July, 1981. It contended the Mini–Code did not apply.

default, *whichever is greater,* not to exceed $100.00. Such late charge may be collected only once on any scheduled payment, regardless of the period during which it remains in default. (emphasis added)

3. *Ala.Code* § 5–19–1(3) provides:
For purposes of this chapter, the following terms shall have the meanings respectively ascribed to them by this section:
(3) CREDITOR. Such term refers only to creditors who *regularly extend or arrange* for the extension of credit for which the payment of a finance charge is required, whether in connection with loans, sales of property or services or otherwise. The provisions of this chapter apply to any such creditor irrespective of his or its status as a natural person or any type of organization. The provisions of this chapter shall exclusively control the permitted activities and restrictions of any state-chartered credit union or its officers and directors to the extent that

To counter this argument, the Crotzers introduced into the record certified copies of 26 mortgages listing WBI as mortgagee recorded in Cullman County, Alabama, in 1980; and copies of 24 such mortgages recorded in Cullman County in 1981. All these mortgages provided for a finance charge. (Doc. 14).

January 2, 1992, Crotzer filed a voluntary Chapter Thirteen bankruptcy petition. WBI filed proofs of claim Nos. 1 and 2 for the regular obligation and arrearage on January 21, 1992. Claim No. 1 was for $63,957.06 in principal, interest and finance charges and additional charges; claim No. 2, $4,597.24 in arrearage.

The Crotzers filed an objection to WBI's proofs of claim on February 4, 1992. (Doc. 8). That objection contended that WBI violated the sections of the Mini–Code on late charges and cautionary statement.

The objection to claim asked that the court disallow the claim of WBI; declare its note and mortgage void because of the Mini–Code violation; order WBI to repay the Crotzers all sums received under the note and mortgage; and award costs, including attorneys fees, to the Crotzers.

WBI, in oral argument and written pleading, contended that *Ala.Code* § 5–19–11(b)⁴, added to the Mini–Code in 1990, should apply to limit any damages awarded in this case.

this chapter permits or proscribes any conduct; the provisions of this chapter being intended to preempt all existing legislation. (emphasis added)

4. *Ala.Code* § 5–19–11(b) provides:
Except where other specific remedies are provided in this chapter for violations of specific provisions of this chapter in which event such remedies shall apply, any provision of a consumer credit transaction which violates the provisions of this chapter shall be unenforceable by the creditor *to the extent, but only to the extent, of such violation,* and the *other remaining provisions and agreements shall not be affected by such violation.* Any creditor who fails to comply with any requirement imposed under this chapter with respect to any person is liable to such person for the *actual damage* sustained by such person as a result of the failure. (emphasis added)

This court held a hearing on the objection March 19, 1992, taking the issue under advisement after the record was finalized July 30, 1992.

## CONCLUSIONS OF LAW

Neal L. and Mary L. Crotzer, Jr. have demonstrated that Walker Builders, Inc., was a "creditor" under the Alabama Mini–Code in 1981 when this promissory note/mortgage transaction was executed. The Crotzers have also shown that WBI violated two sections of the Mini–Code, with WBI conceding the validity of the facts that constitute those violations.

So the major issue in this case is the remedy. Application of Alabama statute to the facts shows that these violations do not cause WBI's mortgage to become unenforceable, but do require a reduction of WBI's claim against the Crotzers.

### I.

*The Mini–Code only applies to those creditors who regularly extend or arrange for the extension of credit for which payment of a finance charge is required.*

 The definition of "creditor" as one "who *regularly* extends" credit in *Ala. Code* § 5–19–1(3) is central to determining application of the Mini–Code. However, Mini–Code itself never defines "regularly". The court, in construing a statute, must look to the language of the statute, the purpose and object of the enactment, and to other related statutes. *See Sand Mountain Bank v. Albertville Nat. Bank*, 442 So.2d 13, 18 (Ala.1983); *Board of Dental Examiners v. King*, 364 So.2d 311, 314 (Ala.Civ.App.1977); *State v. Morrow*, 162 So.2d 480, 482 (Ala.1964); and *State v. AAA Motor Lines*, 155 So.2d 509, 511 (Ala. 1963).

The intent of the Alabama Legislature in enacting the Mini–Code was to protect individual debtors from lenders with a substantial share of the market (creditors who "regularly" extend credit). That protection was not provided against individuals and entities which did not "regularly" extend credit. See *Centennial Associates LTD v. Clark*, 384 So.2d 616, 618 (Ala.1980).

The federal *Truth In Lending Act*, 15 U.S.C. § 1601 et seq. (1982) is closely related in policy goals to the Alabama act. Section 226.2(a)(17) of Regulation Z defines *creditor* and "a person who *regularly* extends credit." It is a useful measure of how model consumer protection legislation would view WBI's credit activities in the early 1980s. Footnote three of Section 226.2(a) states:

A person *regularly extends consumer credit only if it is extended more than 25 times (or more than 5 times for transactions secured by a dwelling)* in the preceding calendar year ... (emphasis added)

The debtor proved that WBI extended credit secured by real estate mortgages 26 times in 1980, and 24 times in 1981 in one Alabama county. WBI was "regularly" extending credit for a finance charge in the early 1980s.

The court finds that Walker Buildings, Inc., was a "creditor" under *Ala. Code* § 5–19–1(3) in the summer of 1981 and subject to all provisions of the Alabama Mini–Code.

### II.

*Section 5–19–11(b) of the Mini–Code limits Crotzer's remedy against WBI.*

A. Statutes setting out remedies can be viewed as applying retroactively if they are on the books at the point a remedy is decreed.

 The Crotzers cite the general rule that new statutes should apply *prospectively* and argue that Section 5–19–11(b) should not apply in this case. In Alabama, statutes are applied prospectively unless there is an express statutory provision or clear legislative intent that the statute should apply retroactively. *See Jones v. Casey*, 445 So.2d 873, 875 (Ala.1983); *Kittrell v. Benjamin*, 396 So.2d 93, 94 (Ala. 1981), citing *City of Brewton v. White's Auto Store, Inc.*, 362 So.2d 226 (Ala.1978).

However, statutes decreeing civil remedies are viewed differently. Remedial stat-

utes such as Section 5–19–11(b) are applied *retroactively* in a sense, absent clear legislative intent to the contrary. *See Jones v. Casey,* 445 So.2d 873, 875 (Ala.1983); and *Williams v. State,* 504 So.2d 282, 284 (Ala. Civ.App.1986).

B. Section 5–19–11(b) applies to remedies in actions filed on or after its effective date, April 17, 1990.

■■■ Prior to 1990, the thrust of Section 5–19–11 was much different than the amended version. It was a pro-consumer section which required a creditor to file an affidavit that it had not been in violation of *any* of the provisions of the Mini–Code before it could sue a debtor to collect. The creditor also had to file an affidavit attesting that the debtor was a resident of the county where the suit was filed.

"If such violation exists or if the debtor is not a resident of the county in which such action is filed, the action shall be abated," the old section read.

In 1990, the legislature amended the section. Section 5–19–11 now requires only that the creditor attest that it has the license required by the Mini–Code in order to sue. A sworn affidavit attesting compliance with Mini–Code is no longer a prerequisite to collection suit.

Additionally, the revised Section 5–19–11 at subsection (b) limits damages for violation of the Mini–Code "to the extent, but only to the extent, of the violation." Thus if a creditor violates the Mini–Code by failure to include the cautionary statement or by charging excessive late charges, the remedy of voiding the entire transaction is ruled out.

Damages would be limited to "actual damages." The amended section would not apply to Mini–Code sections where specific violation remedies are provided. However, neither of the sections involved in this case, Sections 5–19–4 or 5–19–6, provide for specific remedies.

Amended Section 5–19–11(b) is effective for remedies entered in cases filed on or after its effective date, April 17, 1990, even if the cause of action involves Mini–Code violations prior to the amendment.[5] This effective date would be stayed only if the present litigation was already pending on the effective date.

The Crotzers' motion to deny WBI's claim, was filed February 4, 1992, long after the effective date of new Section 5–19–11(b). Therefore, the amendment applies to limit damages in this case.

C. So the contract between the Crotzers and WBI must remain enforceable, though the Crotzers are due some damages.

■■ Since the 1990 limitation embodied by Section 5–19–11(b) applies to this case, the court may not void this contract because of WBI's violation of two sections of the Mini–Code. However, the Crotzers' are due actual damages.

Mini–Code violations remedial under Section 5–19–11(b) are severable from the rest of the agreement between creditor and debtor. The Crotzers' argument is based on an incorrect interpretation of *Derico v. Duncan,* 410 So.2d 27 (Ala.1982), and does not take into consideration the language of Section 5–19–11(b).

D. The Crotzers proved WBI violated two sections of the Mini–Code, but proved actual damages from only one of the breaches.

1. *The Crotzers are due no damages for WBI's violation of the requirement for a cautionary statement.*

■■ WBI violated the Mini–Code by leaving out the mandatory cautionary statement required by Section 5–19–6. However, Crotzer has not alleged any actual damages caused by the absence of the cautionary statement. Consequently, this court cannot award damages for WBI's violation of Section 5–19–6. The 1990 amendment in Section 5–19–11(b) has turned Section 5–19–6 into a "toothless tiger".

---

**5.** The annotation in the 1992 Supplement to *Ala.Code* § 5–19–11 includes:

Code Commissioners note.—Acts 1990, No. 90–384, § 4 provides: "This act shall become effective upon its passage and approval by the governor or upon its otherwise becoming a law, but shall not apply to claims alleging violations of this chapter which have been asserted in litigation pending as of the effective date of this act (April 17, 1990)."

## 2. However, damages must be awarded for WBI's breach of the Mini–Code limit on late charges.

■ The Crotzers' proved they are due actual damages for WBI's violation of Section 5–19–4. That section limits late fees to charges "not exceeding five percent of the amount of such scheduled payment in default, or, of $.50 on each scheduled payment in default, whichever is greater, not to exceed $100.00."

WBI had charged the Crotzers late fees 45 times as of May, 1991. Of that total, 31 late charges exceeded the five percent limit set by Section 5–19–4.

WBI argues that the clause "any provision of a consumer credit transaction which violates the provisions of this chapter shall be unenforceable by the creditor but only to the extent of such violation" (language of Section 5–19–4) is meant to limit the damage award to the difference between the five percent *legal* late charge and the actual, *illegal* late charge.

The legal limit was five percent, WBI actually charged the Crotzers late charges of 10 to 13 percent on 31 occasions. The creditor contends that it should be allowed to retain everything it would have had if it had obeyed the law from the beginning.

That argument ignores the policy underpinning of the 1971 Mini–Code since it would allow violation of the law with absolutely no penalty. The "aim of the Mini–Code is consumer protection", said *Derico v. Duncan*, 410 So.2d 27, 31 (Ala.1982) of legislative intent.

Nothing in the scant 1990 annotation to the Section 5–19–11(b) amendment suggests that the Alabama Legislature *intentionally* set out to destroy consumer protection as the "aim of the Mini–Code."

The language of Section 5–19–11(b) should be construed as limiting violation of the Mini–Code to the section breached. The legislature did not intend, for example, a violation of Section 5–19–4 to cause an entire credit transaction to be voided.

In contrast, WBI's interpretation of Section 5–19–11(b) would cause Section 5–19–4 to become a guaranteed late fee *minimum*

in practicality, rather than a legal *maximum*. The five percent/or 50–cent limit on late fees was intended by the drafters of the Mini–Code as a *ceiling*, not a *floor* for creditors.

Under this construction, consumers would have the burden of investigating creditors' compliance with Mini–Code rather than creditors being under a burden to obey the law. Indeed, WBI's interpretation would give creditors an a positive incentive to break the law. For even when courts held they charged excessive late fees, they could still keep the legal five percent—after also profiting from use of money illegally extracted from consumers.

Such a construction would mean that routinely breaking the law would be the most economically efficient decision for creditors. This court rejects that interpretation of Section 5–19–11.

Because of WBI's violation of Section 5–19–4, the Crotzers are due an award of damages totalling *all* the late charges on the payments where WBI was shown to have exceeded the legal limit. The total on those illegal late charges is $1,608.89.

The award will consist of a setoff against WBI's proof of claim No. 2 for arrearage, reducing that total from $4,597.24 to $2,988.35.

## III.

### The Crotzers are not entitled to award of attorneys fees and costs.

■ Alabama follows the American Rule, which allows for the recovery of attorney fees and costs "only when authorized by statute, when provided by contract, or by special equity, such as where efforts of any attorney create a fund from which fees may be paid." See *Dandy's Discount Package Store, Inc. v. Sizemore*, 597 So.2d 1370, 1372 (Ala.Civ.App.1992); *Ex parte Cowgill*, 587 So.2d 1002, 1003 (Ala.1991); *Cowgill v. Bowman Transportation, Inc.*, 587 So.2d 1000, 1002 (Ala.Civ.App.1991); *Bell v. Birmingham News Co.*, 576 So.2d 669, 670 (Ala.Civ.App.1991) and *Lanier v. Moore–Handley, Inc.*, 575 So.2d 83, 85 (Ala.1991).

Neither the mortgage agreement nor the applicable statutes provide for payment of the Crotzers' attorney fees and costs. Therefore, the attorney fees and costs they seek may not be awarded.

## CONCLUSION

WBI violated two sections of the Mini–Code, legislation enacted by the 1971 Alabama Legislature to protect consumers. The plaintiffs proved that WBI violated Section 5–19–4 (limiting late charges) and Section 5–19–6 (requiring a cautionary statement).

The Crotzers sustained actual damages from 31 violations of the late charge limits and damages of $1,608.89 are awarded for this violation. The damage award will be in the form of a setoff against WBI's arrearage proof of claim No. 2. It will reduce that claim from $4,597.24 to $2,988.35.

Thus the Crotzers' objection to claim is sustained in part and denied in part. A separate order, consistent with this memorandum of decision, will be entered pursuant to Fed.R.Bankr.P. 7052.