664 So.2d 877 (1995)
Charles JOHNSON, et al.
v.
ALABAMA POWER COMPANY.
ALABAMA POWER COMPANY
v.
Charles JOHNSON, et al.
1921696, 1921722.
Supreme Court of Alabama.
May 19, 1995.
Rehearing Denied July 14, 1995.
Michael J. Evans and Thomas W.H. Buck of Longshore, Evans & Longshore, Birmingham, for appellants (Johnson et al.).
John P. Scott, Jr. and Alan T. Rogers of Balch & Bingham, Birmingham, Oakley Melton, Jr. of Melton, Espy, Williams & Hayes, Montgomery, Hewitt L. Conwill of Conwill & Justice, Columbiana, Frank C. Ellis, Jr. of Wallace, Ellis, Head & Fowler, Columbiana, for appellee (Alabama Power Co.).
PER CURIAM.
AFFIRMED. NO OPINION.
See Rule 53(a)(1) and (a)(2)(F), Ala. R.App.P.
MADDOX, ALMON, KENNEDY, INGRAM, COOK, and BUTTS, JJ., concur, in case 1921696.
HOUSTON, J., concurs specially, in case 1921696.
SHORES, J., dissents, in case 1921696.
MADDOX, ALMON, SHORES, HOUSTON, INGRAM, and COOK, JJ., concur, in case 1921722.
KENNEDY and BUTTS, JJ., dissent, in case 1921722.
*878 HOUSTON, Justice (concurring specially).
I concur; however, I write specially to address Justice Shores's dissent.
I must first comment on and agree with Justice Shores's statement regarding a principle of statutory construction that was most recently applied in Justice Maddox's dissent in the answer to the certified question concerning absentee ballots. See Roe v. Mobile County Appointment Board, [Ms. 1940461, March 14, 1995] ___ So.2d ___ (Ala.1995) (Maddox, J., dissenting). It is the settled law, as I wrote, with eight Justices concurring, in answer to a certified question, in IMED Corp. v. Systems Engineering Associates Corp., 602 So.2d 344, 346 (Ala.1992):
"Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says."
This rule of statutory construction is not relevant in this case, because this case does not turn upon the plain language, or, for that matter, upon any language, of Ala.Code 1975, § 5-19-11 (as originally enacted). Interestingly enough, § 5-19-11 is styled "Affidavit to be filed by creditor before bringing action." This was amended by Ala. Acts 1990, Act No. 90-384; and, as amended, this section is styled "Affidavit to be filed by creditor before bringing action; consequences of certain violations." In 1990, for the first time, the legislature proscribed remedies for violation of the rights it had created 19 years before.
The Legislature enacted the "Mini-Code" in 1971, 70 years after the Constitution of 1901 had been ratified, giving by that legislation certain specific rights to debtors in consumer credit transactions. However, the Legislature provided no specific remedy in the Mini-Code to consumers/debtors seeking to enforce their legislatively created rights. Therefore, in Derico v. Duncan, 410 So.2d 27 (Ala.1982), this Court applied in a Mini-Code case the general common law rule that contracts made in derogation of a regulatory licensing statute are void and, thus, unenforceable. In so doing, this Court afforded debtors a specific remedy, because the Legislature had provided no remedy. The common law rule applied in Derico, however, has no application within the context of the present action, which was filed on September 26, 1990, because of the Legislature's April 17, 1990, amendment to Ala.Code 1975, § 5-19-11. See Ala. Acts 1990, No. 90-384. The revised § 5-19-11, in subsection (b), specifies that a debtor may recover only for actual damage sustained by the debtor as a result of the creditor's violation of the Mini-Code. Subsection (b) makes it very clear that the judicially enforced common law remedy of voiding an entire consumer credit transaction is no longer available in cases such as this one. See, also, In re Crotzer, 147 B.R. 252 (Bankr.N.D.Ala.1992). The last sentence of subsection (b) states that a debtor may be compensated for the "actual damage" sustained as a result of the creditor's failure to comply with "any requirement imposed under this chapter." The "chapter" referred to is Chapter 19 (consisting of 31 sections) of Title 5, governing consumer credit transactions. Subsection (b) is applicable in cases of this kind unless a "specific remed[y]" is otherwise provided in Chapter 19 to a debtor for the particular violation involved. Neither § 5-19-22, the licensing provision that was violated in this case; § 5-19-29, which authorizes the state banking superintendent to seek an injunction to enforce the licensing requirements; nor § 5-19-30, which deals with the criminal penalties applicable to creditors operating in violation of the licensing requirements, provides for such a "specific remed[y]" to the debtor. Therefore, because Alabama Power Company was not licensed under § 5-19-22 to make consumer loans before June 23, 1989, it had no statutory authority to charge interest in connection with the financing of its heat pumps or other merchandise sold before that date. The only actual damage sustained by the plaintiffs as a result of the licensing violation was the contractual requirement that they pay interest on their loans. Thus, the trial court's order requiring a refund of the interest paid by the plaintiffs to Alabama Power Company, but otherwise leaving intact the plaintiffs' contractual obligations to pay for the merchandise purchased, was proper.
*879 I also note that subsection (b) of § 5-19-11 is applicable in cases, such as this one, filed after the effective date of April 17, 1990, even if the cause of action involves a Mini-Code violation that took place before the amendment. Section 4 of Act No. 90-384 provides:
"This Act shall become effective upon its passage and approval by the Governor or upon its otherwise becoming a law, but shall not apply to claims alleging violations of this Chapter which have been asserted in litigation pending as of the effective date of this Act."
Subsection (b) of § 5-19-11 did not create, enlarge, diminish, or destroy any vested, substantive rights; instead, it cured a legislatively perceived defect in the Mini-Code with respect to the remedies available in cases involving Mini-Code violations. The Legislature created specific rights for debtors when it enacted the Mini-Code, and it did nothing more in amending § 5-19-11 than to provide a specific statutory remedy to enforce those rights. Subsection (b) falls within this Court's definition of remedial legislation and operates retroactively, absent clear language to the contrary. See Ex parte Burks, 487 So.2d 905 (Ala.1985). The Act contains no prohibition against retroactive application. To the contrary, § 4 of the Act indicates that the Legislature clearly contemplated application of the new remedy provision in cases other than those pending on April 17, 1990.
SHORES, Justice (concurring in case 1921722 and dissenting in case 1921696).
I respectfully dissent from that portion of the majority's summary affirmance that affirms the trial court's decision not to follow the common law rule of Derico v. Duncan, 410 So.2d 27 (Ala.1982), and I concur with that portion of the summary affirmance that affirms the trial court's holding that the class members are entitled to recover interest payments they have made to Alabama Power Company ("APCo") and its order enjoining APCo from collecting interest on the loans.
The lawsuit was filed as a class action on September 26, 1990, on behalf of all persons who, before June 23, 1989, had become financially obligated to APCo when the company financed for them the purchase of heat pumps and other merchandise, without first obtaining a license from the Alabama State Banking Department as required under § 5-19-22, Ala.Code 1975, a portion of the Mini-Code. The class members sought to void the debt agreements with APCo and to obtain a refund of the principal and interest they have paid APCo.
The trial court held a hearing on cross motions for summary judgment; the motions were supplemented with briefs and oral arguments. On June 14, 1993, the trial judge entered a partial summary judgment in favor of the class members and a partial summary judgment in favor of APCo. He held that the amendment to § 5-19-11(b) of the Mini-Code overruled Derico v. Duncan by implication, and, thus, that the class members were liable for the principal on the contracts, but that APCo must refund all interest paid by the class members. The class members appealed; APCo cross-appealed.
The majority summarily affirms the trial court's judgment. I dissent in part, because I believe that the rule of Derico v. Duncan controls in the present case and voids the contracts. Derico v. Duncan addressed a certified question from the United States District Court for the Middle District of Alabama. The question was:
"Does defendant's failure, which was not willful, to obtain a license according to Section 5-19-22 affect plaintiff's obligation under the loan contract between plaintiff and defendant, and if so, to what extent?"
410 So.2d at 28. We answered:
"We conclude that the provisions of Code 1975, § 5-19-1 et seq., `Consumer Finance,' known collectively as the Mini-Code, are regulatory in nature and are for the protection of the public, specifically, the consumer/debtor.
"In this context, then, we have examined the Mini-Code in the light of applicable Alabama law and we hold that contracts made in violation of the requirements of the Mini-Code are null, void, and unenforceable as a matter of public policy. Further, we hold that, notwithstanding Defendant's non-willfulness in failing to obtain a license to engage in the business of making consumer loans, that failure was in *880 direct violation of § 5-19-22(a). Therefore, that portion of Plaintiff's indebtedness represented by the loan (as distinguished from the debt on the contract to repair) is void, including both the principal and the interest...."
410 So.2d at 31.
Derico v. Duncan is not an anomaly in this Court's jurisprudence, but is firmly rooted in almost a century of unbroken precedent, because it follows the common law rule that contracts with an unlicensed person are void, if the person was required to have a license for the protection of the public. See: Edwards v. Farm Bureau Mut. Cas. Ins. Co., 453 So.2d 746 (Ala.Civ.App.1983), appeal after remand, 509 So.2d 232, 235-36 (Ala.Civ. App.1986), in which the Court of Civil Appeals held that a failure to comply with § 5-19-22 of the Mini-Code rendered the note, as well as the underlying subrogation obligation, void.
The trial court in the present case recognized the rule of Derico v. Duncan; however, it concluded that it was not "duty bound to follow Derico under the doctrine of stare decisis," because of the 1990 amendment to § 5-19-11, part of the Mini-Code. I believe that the trial court erred as a matter of law in ruling that the 1990 amendment to § 5-19-11 implicitly overruled Derico. Section 5-19-11, both as it originally read, and as amended, by its plain language, applies only to the procedural affidavit requirements and remedies available to a creditor who sues for collection on a debt. In amending this section, the Alabama Legislature did not, intentionally or unintentionally, change the policy of the Mini-Code and emasculate its licensing provision.
The rule of Derico v. Duncan is still alive and well: "Indeed, as we have always held to be the law in Alabama, whenever regulation and protection are the goal of a statute, contracts made in derogation of that statute are null, void, and unenforceable." 410 So.2d at 31. It is not disputed that in this case APCo had no license under § 5-19-22(a) to engage in the business of making consumer loans at the time it entered into such contracts with the class members. Therefore, I would hold that the class members are entitled to a refund of both the principal and the interest paid on these void contracts.
BUTTS, Justice (concurring in part and dissenting in part).
I concur in the majority's summary affirmance of the trial court's judgment insofar as that judgment recognized that the common law rule of Derico v. Duncan, 410 So.2d 27 (Ala.1982), is no longer applicable to entirely void the plaintiffs' consumer loans with Alabama Power Company ("APCo"). However, I respectfully dissent from the majority's action affirming that portion of the trial court's judgment holding that the plaintiffs are entitled to recover interest payments they have made to APCo and enjoining APCo from collecting interest on the loans.
The plaintiffs in this class action sought a judgment from the circuit court declaring that, because APCo was not licensed under Alabama law to make consumer loans when it made such loans to the plaintiffs, the plaintiffs' loan contracts with APCo are void and unenforceable. The plaintiffs requested that APCo be required to refund to them all principal and interest payments made to APCo on the loans; the plaintiffs also sought to keep the electric heat pumps they had purchased with the loan proceeds. The plaintiffs did not allege, and they have never contended, that APCo violated any provision of the consumer finance codethe "Mini-Code"other than Ala.Code 1975, § 5-19-22, its licensing provision. Until June 23, 1989, APCo had merely failed to obtain a license to make consumer loans; obtaining a license includes paying minimal application and license fees.
Under the common law rule of Derico relied on by Justice Shores in her opinion, concurring in part and dissenting in part, a violation of the Mini-Code licensing provision would entirely void the plaintiffs' consumer loan contracts with APCo. However, I believe that the trial court correctly held that the legislature's revision of § 5-19-11(b), a portion of the Mini-Code, by Ala.Acts 1990, Act No. 90-384, abrogated the harshness created by Derico's common law remedy of rendering such contracts void and unenforceable simply because the creditor had violated the *881 licensing provision. See In re Crotzer, 147 B.R. 252 (Bankr.N.D.Ala.1992).
Act No. 90-384, which revised several provisions of the Mini-Code, applies to all cases filed after April 17, 1990. Thus, the revised § 5-19-11(b) clearly applies to this case, which was filed on September 26, 1990. That section provides a remedy for violations of the Mini-Code where the provision violated, such as § 5-19-22, provides no specific remedy. Section 5-19-11(b) states: "Any creditor who fails to comply with any requirement imposed under this chapter with respect to any person is liable to such person for the actual damage sustained by such person as a result of this failure." (Emphasis added.)
Under this statutory remedy the plaintiffs in this action are entitled to compensation for the actual damage suffered, claimed, and proven by them as a result of the fact that APCo did not have a license to make consumer loans when it made consumer loans to the plaintiffs. It is well-settled law that a party seeking to recover damages must plead and prove entitlement to those damages. Marcus v. Lindsey, 592 So.2d 1045 (Ala.1992); Segars v. Reaves, 567 So.2d 249 (Ala.1990); Johnson v. Harrison, 404 So.2d 337 (Ala. 1981); Hartford Accident & Indemnity Co. v. Cosby, 277 Ala. 596, 173 So.2d 585 (1965). Further, plaintiffs are generally competent to testify as to their damages. Marcus, supra; Segars, supra. However, the record in this case reveals that the class representatives claimed no injury as a result of APCo's violation of the Mini-Code's licensing provision. The class representatives readily admitted in deposition testimony that they have suffered no real and present damage.
Class representative Charles Johnson testified as follows:
"[APCo'S ATTORNEY]: All right, sir. In what way did [APCo's] not having a license damage or injure you, in your judgment?

"[MR. JOHNSON]: Well, right at the present, it hasn't affected me at present.

"[APCo'S ATTORNEY]: Okay.
"[MR. JOHNSON]: But no man can look into the future and predict what is going to happen. See, they took a mortgage on my house, second mortgage. Okay. And if for some reason or another, I fail to abide by this contract, then somebody is going to foreclose the mortgage on my home. Am I right? Okay. I feel like if they can do this, then I think that they should have been licensed within the law to do this.
". . . .
"[APCo'S ATTORNEY]: All right, sir. Is there anything else that you can tell me in the way in which you contend you have been damaged as a result of the company's failure, as you have contended it, to have a license under the Mini-Code.
"[MR. JOHNSON]: Repeat that again.
"[APCo'S ATTORNEY]: Can you, other than what we have already talked about, tell me any other way in which you contend you have been damaged as a result of your contention that the Power Company didn't have and should have had a license under the Mini-Code to arrange this financing for you?

"[MR. JOHNSON]: No, sir."
The testimony of the second class representative, Doris Van Tassell, shows even more clearly that the plaintiff class suffered no actual damage or loss as a result of APCo's violation of the Mini-Code's licensing provision.
"[APCo'S ATTORNEY]: Let me focus on the lawsuit now. Are you claiming that you have been damaged in some way by Alabama Power Company?
"[MS. VAN TASSELL]: Well, I think that Alabama Power has violated a law concerning the Mini-Code and that they were not licensed to grant consumer loans.
"[APCo'S ATTORNEY]: Are you claiming that you have been damaged in some way by that?

"[MS. VAN TASSELL]: I don't really know how to answer that.

"[APCo'S ATTORNEY]: If you had financed the heat pump with someone who was licensed, do you see or is it your judgment sitting here today that you would have somehow paid less or been better off in some way, and, if so, please explain.

*882 "[MS. VAN TASSELL]: Well, I know that I was not enlightened, I did not know that they were not licensed at the time. But if I were to do a service for someone and I needed a license, I would expect to be sure that I had it.
"[APCo'S ATTORNEY]: Do you feel that you lost money because of that? In other words, what have you lost because of the licensing violation that you have alleged.

"[MS. VAN TASSELL]: Moneywise, I haven't lost anything.

"[APCo'S ATTORNEY]: What have you lost besides money? Has there been something else?
"[MS. VAN TASSELL]: I don't think that relates to what towhether I have lost anything or not, to this subject. I don't feel like it is relating to the issue here.
"[APCo'S ATTORNEY]: Have you lost anything as a result of the licensing violation that you have alleged whether or not it relates, just

"[MS. VAN TASSELL]: Oh, no, I haven't lost anything.

"[APCo'S ATTORNEY]: What are you seeking in the lawsuit?
"[MS. VAN TASSELL]: Well, I am seeking to represent a group of people who have received loans due to the same fact that I have and they didn't know that Alabama Power was not licensed.
"[APCo'S ATTORNEY]: Do you know, and not ... what you might guess, but do you know whether any of those people you seek to represent have lost anything because of that violation you have alleged, whether it is money or something else?

"[MS. VAN TASSELL]: At this time, I don't know."
The class representatives were clearly unable to articulate any showing of actual damage, as required by § 5-19-11(b), which provides the only remedy available to them for a violation of the Mini-Code's licensing provision. Accordingly, I would hold that APCo's consumer loan contracts with the plaintiffs are not void and that APCo is not liable to the plaintiffs for money damages.[1]
KENNEDY, J., concurs.
NOTES
[1] This ruling would not open the flood gates for unlicensed consumer finance creditors; § 5-19-29, a part of the Mini-Code, authorizes the state banking superintendent to bring an action seeking an injunction restraining a creditor from doing business without a license, and § 5-19-30 authorizes the superintendent to seek criminal sanctions against creditors who do business without a license.