8 So.2d 208

STONE, County Treasurer, v. STATE ex rel. GOETZ.

1 Div. 425.

Court of Appeals of Alabama.

·April 23, 1942.

Rehearing Denied ·May 12, 1942.

490

Gordon & Gordon, of Mobile, for appellant.

Jere Austill, of Mobile, for appellee.

BRICKEN, Presiding Judge.

In 1932 the Legislature adopted an Act, Local Acts, Extra Session 1932, p. 108 et seq,

in section 3 of which it provided: "Section 3. Beginning at the next term of office of the Probate Judge next after the approval of this Act, the Probate Judge of Mobile County shall receive the following yearly salary and may employ the following secretaries, clerks and assistants, who shall receive the following yearly salaries: The Probate Judge shall receive a yearly salary of Six Thousand Dollars, and the Probate Judge may employ as assistants: One Chief Clerk at Thirty-six Hundred dollars per annum, one secretary at Eighteen Hundred Dollars per annum, one clerk at Twenty-four Hundred Dollars per annum, one clerk at Sixteen Hundred and Twenty Dollars per annum, one clerk at Twelve Hundred Dollars per annum and four clerks whose total compensation per annum shall not exceed Thirty-six Hundred Dollars, the salary of each of the four last mentioned clerks to be fixed by the Probate Judge."

Immediately thereafter, the then Probate Judge of Mobile County employed the relator (as one of the four clerks whose aggregate compensation should not exceed Thirty-six Hundred Dollars) at a monthly salary of seventy-five dollars, and she has since been paid that salary.

In 1939 the Legislature adopted an Act establishing a county-wide civil service system in Mobile County, Local Acts 1939, page 298 et seq. That Act provides, among other things, in Section 1: " 'Employee' or 'Appointee' means a person in the Classified Service herein set up and appointed by an Appointing Authority, unless herein specifically excepted. 'Classified Service' includes all offices, positions, and employment in Mobile County or any such city therein as these offices, positions and employment now exist or as they may hereafter exist, the holders of which are paid whether by salary, wages, or fees in whole or in part from funds of Mobile County or any such city, or the holders of which receive their compensation from any elected official and perform duties pertaining to the office of such elected official or officer, except those placed in the 'Unclassified Service' by Section Two hereof."

Section 2 of the Act enumerates eleven hence not covered by the Act, but we do not find relator comes within either of these groups as in the "unclassified service" and excluded eleven groups.

Section 3 provides for the establishment of a Personnel Department, and Section 4 defines the purposes of that department as

follows: "Section IV. The personnel Department created by this Act shall, to the extent set out in this Act, govern and control, by Civil Service rules, regulations and practices, hereinafter set out or provided for, all individuals in the Classified Service."

By Section VII it is provided that the Citizens Supervisory Committee, set up by the terms of the Act, shall appoint the Personnel Board, consisting of three members, and this Personnel Board's authority is set forth in subparagraphs numbered 1 to 9, both inclusive (page 304), Subsections (1) and (3) are as follows: "To select a Personnel Director as hereinafter provided in Section 9 of this Act. * * * (3) After a Public Hearing or Hearings to adopt, modify, or reject such Classification and Compensation Plans for the Classified Service together with Rules for their administration, as may be recommended by the Director after a thorough survey by him of the personnel and departmental organizations included in such plan or plans."

Sections VIII and IX enumerate the duties of the Personnel Director, but it is provided in Section IX: "The Board shall have power on its own initiative to propose Rules, amendments or additions to the Rules and, after holding a Public Hearing thereon, adopt, modify, or reject them." This with reference to the Rules suggested by the Director:

"Section XI. Pay Plan. After consultation with Appointing Authorities and/or other officers, the Director shall prepare and recommend to the Board a Pay Plan for all employees in the Classified Service. Such Pay Plan shall include, for each class of positions, a minimum and a maximum rate *not inconsistent* with such rate or rates as may otherwise in specific instances *be fixed by law*. In establishing such rates, the Director shall give consideration to the experience in recruiting for positions in the Classified Service, the prevailing rates of pay for the services performed, and for comparable services in public and private employment, living costs, maintenance or other benefits received by employees, and the County's and Cities' financial condition and policies. Such Pay Plan shall take effect when approved by the Board. Amendments thereto may, from time to time, be made in the same manner and/or upon motion of the Board. Each employee in the Classified Service shall be paid initially at the minimum rate set forth in the Pay Plan for the Class of positions in which he is employed. The raising or lowering of the pay of an individual within the maximum and minimum rate shall be done upon the request of the Appointing Authority, with a similar recommendation by the Director, and the approval of the Governing body." [Italics added]

As noted above this Pay Plan may be rejected by the Personnel Board in its entirety, or modified, or adopted as the wisdom of the Personnel Board dictates.

Following the 1939 Act, the Personnel Board classified relator as a senior clerk, and fixed her salary at ninety dollars a month, commencing October 1, 1940. From that date onward relator served in the same position as theretofore, performed the same duties, has been carried on the Judge of Probate's payroll at ninety dollars per month, and has regularly received each month two warrants, one for seventy-five dollars, and one for fifteen dollars, drawn upon the respondent Treasurer. He has regularly paid the seventy-five dollar warrants, and has regularly declined to pay the fifteen dollar warrants as being issued without authority of law, and this mandamus proceeding seeks to compel the payment of these fifteen dollar warrants.

As we construe Section XI, it specifies certain facts and information the Director shall take into consideration in formulating his Pay Plan and the italicized words may confine his suggested pay plan to the rates of pay already "fixed by law," but even so, they in no wise limit or restrict the Personnel Board which was authorized to adopt, modify or reject entirely the proposed plan of the Director.

Furthermore, it cannot be said that the relator's salary, under the 1932 Act, was "fixed by law." It was fixed by agreement between the then Probate Judge and the relator, and it could have been changed by agreement, either decreased or increased, so long as the aggregate sum paid the relator and the three others in her group, did not exceed the statutory limit of $3,600. Subject only to that limitation relator's salary might have been increased or diminished. It was far from "fixed." Moreover, the repealing clause of Section XXXVI of the Act would of itself repeal, if repeal was necessary, the limitation upon the power of the Personnel Board to increase the relator's salary.

Under the agreed statement of facts, then, the relator is entitled to have these war-

rants paid, and to receive as long as she remains in her present position and the present salary schedule is maintained, the salary fixed by the Board.

The lower court awarded the writ prayed for and its judgment is affirmed.

Affirmed.