**PUBLISH**

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 97-6047

_____

D. C. Docket No. 93-0555-AH-M

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
07/21/98
THOMAS K. KAHN
CLERK

CLYDE H. FREEMAN, <u>et al.</u>,

Plaintiffs-Appellants,

versus

CITY OF MOBILE, ALA.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

**(July 21, 1998)**

Before BIRCH, Circuit Judge, and HILL and KRAVITCH, Senior
Circuit Judges.

BIRCH, Circuit Judge:

Several dozen police officers (the "Appellants") seek in this

case to force the City of Mobile, Alabama (the "City") to pay them

overtime compensation under the Fair Labor Standards Act, 29 U.S.C. §§ 201-19 (the "FLSA"), for time they have spent on roll-call and other pre- and post-shift duties. Appellants also demand overtime pay from the City on a state law contract claim, based on a 1969 Alabama law that entitles policemen in Mobile County to overtime compensation for work in excess of 40 hours per week. In the district court, Appellants lost their FLSA claims on summary judgment because the court held that the City was entitled to a statutory exemption under 29 U.S.C. § 207(k) (the "7(k) exemption") and that the Department of Labor's (the "DOL"'s) no-docking regulation, 29 C.F.R. § 541.118(a), was invalid as applied. Appellants also lost their contract claim because the district court ruled that the act on which their claim was based had been repealed. On appeal, Appellants argue that the City has not qualified for a 7(k) exemption, that the Supreme Court's recent decision in Auer v. Robbins, __ U.S. __, 117 S. Ct. 905, __ L. Ed. 2d __ (1997), establishes the validity of the no-docking rule, and

2

that the Alabama statute underlying their contract claim is still good law. Although we agree with the district court that the City is entitled to a 7(k) exemption, we believe that the pay-docking issue merits further consideration by the district court in light of Auer, and we are concerned that Appellants's contract claim raises important issues of state law that it would be better for the Supreme Court of Alabama to decide. Therefore, we AFFIRM IN PART, REVERSE IN PART, and CERTIFY two state law questions to the Supreme Court of Alabama.

## I. BACKGROUND

Appellants are patrol officers, sergeants, and lieutenants in the Uniform Services Divisions of the Mobile Police Department (the "MPD"). As such, the officers are subject to the "Rules and Regulations" adopted by the Mobile County Personnel Board (the "Personnel Board"), which has authority under Alabama law to establish job classification and compensation plans for the MPD.

See generally 1939 Ala. Local Acts 470 ("Act 470").  Appellants,

however, are actually in the employ of the City, which is free

under the Personnel Board's Rules to choose a work period for its

employees.

In 1974, the City Commission adopted Resolution 60-1440

"establish[ing] a Fourteen (14) Day work period for all members of

the Mobile Police Department . . . ."  R3-76 at 10.  At least in part,

the City adopted this resolution in response to Congress's

extension of the FLSA in 1974 to cover state and local

governments.  Although the Supreme Court subsequently found

Congress's 1974 amendments to the FLSA unconstitutional, see

National League of Cities v. Usery, 426 U.S. 833, 96 S. Ct. 2465,

49 L. Ed. 2d 245 (1976), the City never repealed Resolution 60-

1440.  As a result, the Resolution has remained in place through

the Supreme Court's reversal of Usery in Garcia v. San Antonio

Metro. Transit Auth., 469 U.S. 528, 105 S. Ct. 1005, 83 L. Ed. 2d

1016 (1985), and Congress's subsequent re-extension of the FLSA.

Following Congress's re-extension of the FLSA, the Personnel Board amended its Rules to address "Payment for Overtime. In Rule 3.1(c), the Personnel Board mandated that:

> All employees non-exempt from the provisions of the Fair Labor Standards Act shall be compensated for overtime for all hours paid in excess of forty (40) hours per week at one and one half (1-½) times the employees' hourly rate of pay, or in the alternative, shall be awarded compensatory time in accordance with the provisions of said Act. . . .

R3-76 at 8. In adopting this rule, the Personnel Board may or may not have repealed an earlier "local act" passed by the Alabama state legislature, 1969 Ala. Local Acts 856 ("Act 856"), which mandated in pertinent part that:

> In all counties coming within the purview of this Act, all policemen employed by any city in the county and all deputy sheriffs in such counties shall be entitled to one and one-half (1 1/2) times their hourly wage for each hour worked in excess of forty (40) hours a week in any one week.

Although the Personnel Board has in Rule 3.1(c) required overtime pay for "non-exempt" City employees, it has not adopted any Rule specifying those positions which it understands to be exempt from the FLSA. Moreover, the City continues to have authority to set its employees' pay periods and to determine their work schedules. Pursuant to this authority, the City pays its patrol officers, sergeants, and lieutenants every other Friday, reflecting a 14-day payroll period. As part of their regular work schedules, the City's patrol officers must report for roll call ten minutes before each eight-hour shift. With this time taken into account, the patrol officers' regular work schedule is 81 hours and 40 minutes for ten work days in a 14-day payroll period. Similarly, the City's sergeants and lieutenants also must devote time to roll call before their 8-hour shifts. In addition, sergeants and lieutenants must, as part of their regular duties, train, supervise, and discipline their squads of patrol officers. As a result of these responsibilities, the City's sergeants and lieutenants often must perform significant

6

pre- and post-shift activities, causing them to work more than 86 hours within a 14-day payroll period.[1]  The City does not pay its patrol officers, sergeants, or lieutenants any overtime compensation for time spent on roll call; the City pays its patrol officers time-and-a-half for work over 81 hours and 40 minutes in a 14-day payroll period (*i.e.*, for work over 80 hours of shifts plus pre-shift time spent on roll call), but it does not pay its sergeants or lieutenants any additional compensation for overtime work.

As an additional component of the City's pay scheme, its patrol officers, sergeants, and lieutenants are all subject to disciplinary pay-docking under the MPD's "General Orders" for a variety of misbehaviors, including infractions of non-safety rules. As the district court found, the City has in fact docked the pay of several sergeants and lieutenants for violations of non-safety rules.  Although the City claims on appeal to have reimbursed

---

[1]Although the precise number of hours worked by the City's sergeants and lieutenants is in dispute, we assume for purposes of this appeal that they regularly work, as alleged, for 90 hours within each 14-day payroll period.

those sergeants and lieutenants whom it has subjected to non-safety-related, disciplinary pay-docking, Appellants vigorously dispute the City's assertion, and the record on the reimbursement issue is inconclusive.

In 1993, a number of Mobile's police officers sought overtime pay from the City for time spent on roll call. In response to these officers' inquiries, the City's Police Chief issued a memorandum stating that:

> [S]ince the Police Department has an established work period of at least 7 days (ours is actually 14 days), the Department is not required to pay overtime compensation unless you work more than 86 hours during those 14 days. Because you are regularly scheduled for only 81 hours and 40 minutes . . . , you are not entitled to overtime pay for roll call.

R3-76 at 12. In conformance with the Chief's memorandum, the City has refused to pay its patrol officers overtime compensation for time spent on roll call. In addition, the City has continued to deny overtime compensation to its sergeants and lieutenants.

Unsatisfied with the City's policy, Appellants filed suit against the City on July 2, 1993, in the district court. Specifically, Appellants alleged that the City had violated their rights to overtime and straight pay under the FLSA; Appellants also claimed that the City had breached their contractual right to overtime pay under Alabama Local Act 856 and Rule 3.1(c).

In August, 1994, the City moved for summary judgment on three grounds. First, the City argued that, under the FLSA's 7(k) exemption, it is not required to pay overtime compensation to any member of its police force who does not work more than 86 hours in a 14-day payroll period. Second, the City contended that it is not required to pay its sergeants or lieutenants any overtime compensation whatsoever, regardless of their hours, because they are "executive" employees. Third, the City maintained that Appellants are not entitled to overtime compensation as a matter of contract law because Rule 3.1(c) expressly incorporated the FLSA's exemptions and thereby repealed Act 856 by implication.

9

Subsequently, Appellants cross-moved for summary judgment. Among their asserted grounds for summary judgment, Appellants argued that (1) the City does not qualify for a 7(k) exemption because it has not affirmatively and expressly adopted a 7(k) plan, (2) the City's sergeants and lieutenants are not exempt as executive employees because they are subject to non-safety, disciplinary reductions in pay in violation of the DOL's no-docking rule, (3) Act 856 and Rule 3.1(c) both established a contractual right for Appellants to overtime pay, and (4) at a minimum the FLSA requires that the City provide straight pay (as opposed to "time-and-a-half" overtime pay) for work in excess of 40 hours in any 7-day work week.

On October 27, 1994, the district court entered summary judgment for the City against Appellants. In doing so, the district court held that the City was entitled to a 7(k) exemption and that the no-docking rule was invalid as applied to the City.[2] In addition,

_____

[2]Specifically, the district court held that the no-docking rule was invalid because the regulation violated Congress's

10

the district court rejected the Appellants's contract claims on the grounds that Rule 3.1(c) had incorporated the FLSA's exemptions and repealed Act 856.

Upon review of the district court's order on appeal, this court found <u>sua sponte</u> that the district court had failed to resolve Appellants's claim for straight pay. Accordingly, we held that we lacked subject matter jurisdiction because the district court's judgment was not final, and we remanded the case to the district court. <u>See</u> <u>Freeman v. City of Mobile</u>, No. 94-7171 (11th Cir. Aug. 28, 1996). On remand, Appellants did not contest the City's argument that the FLSA does not govern straight pay, and the district court entered judgment against Appellants on that remaining issue. With the City's judgment against them now final, Appellants have timely appealed to this court.

---

legislative intent in extending the FLSA to cover state and local governments by reducing the "public accountability" of such government's employees.

## II. DISCUSSION

On appeal, Appellants advance three arguments that merit discussion. First, Appellants contend that the City must pay overtime compensation for all time worked by Appellants in excess of 40 hours per week because the City has not "affirmatively adopted" a 7(k) plan. Second, Appellants maintain that the Supreme Court's recent decision in Auer has established, contrary to the district court's holding, that the Department of Labor's no-docking rule is valid; Appellants therefore urge us to hold that the City's sergeants and lieutenants do not qualify for the executive exemption because they are subject to pay-docking. Third, Appellants argue that Rule 3.1(c) and Act 856 give them a contractual right to overtime for hours that they work in excess of 40 per week. We examine the district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to Appellants. See Avery v. City of Talladega, 24 F.3d 1337, 1340 (11th Cir. 1994).

## A. THE 7(k) EXEMPTION

Section 207(k) of the FLSA provides that:

No public agency [engaged in law enforcement activities] shall be deemed to have violated subsection (a) of this section with respect to the employment of . . . any employee in law enforcement activities . . . if—
. . . .
(2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours . . . bears to 28 days,
compensation at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(k). Thus, if a city government adopts a work period of 7 to 28 days for its police force, it may require its officers to work more than 40 hours per week without having to pay overtime. See Birdwell v. City of Gadsen, 970 F.2d 802, 804 (11th Cir. 1992). Applying this statutory formula, a city need not pay overtime unless an employee works more than 86 hours in a 14-day work period. See 29 C.F.R. §§ 553.230. In determining

13

whether a public agency is entitled to a 7(k) exemption, we narrowly construe the exception against the employer, and we require the employer to show by "clear and affirmative" evidence that it has adopted a work period of between 7 and 28 days. See Birdwell, 970 F.2d at 805.

To support its claim to a 7(k) exemption, the City cites Resolution 60-1440, its 14-day payroll period, and the 1993 memorandum from the Mobile Police Chief reaffirming and explaining Appellants's work period. To rebut this evidence, Appellants argue that the City has not adopted any resolution containing language explicitly adopting a 7(k) compensation plan. Under our precedents, however, the City does not have to make any such "affirmative" showing. Rather, it is sufficient that the City can show, through Resolution 60-1440 and other circumstantial evidence, that it has adopted a 14-day work period.[3] See Birdwell,

---

[3]Appellants also refer at length to a large number of affidavits, many of which were stricken in whole or in part by the district court, that Appellants contend establish that the City never intended, before initiation of the present litigation, to avail itself of the 7(k) exemption. Even if we were to consider Appellants's affidavits, they would not be relevant to the critical

14

970 at 806; <u>Avery</u>, 24 at 1343.  Since Appellants have offered no relevant evidence of their own tending to show that the City does not have a 14-day work period, there is no dispute of material fact for a jury to resolve.  Thus, we hold that the City is entitled to a 7(k) exemption and so need not pay overtime compensation to any of the appellant patrol officers, sergeants, or lieutenants for up to 86 hours of work in any 14-day work period.

## B. THE NO-DOCKING RULE

Unlike the appellant patrol officers, the appellant sergeants and lieutenants sometimes work more than 86 hours in a 14-day work period, without receiving overtime compensation.  The City, however, argues that it is exempt from paying its sergeants and lieutenants overtime compensation because they are "executive"

---

inquiry under 7(k): whether the City has established a 14-day work period.  Moreover, the City may choose to be more generous with its overtime pay than the FLSA allows, as it has in paying its patrol officers time-and-a-half for work over 81 hours and 40 minutes in a 14-day work period, without sacrificing its right under the FLSA to avail itself of a 7(k) exemption.  <u>See</u> <u>Birdwell</u>, 970 F.2d at 806.

employees under 29 U.S.C. § 213(a)(1). According to § 213(a)(1), the overtime provisions of the FLSA do not apply to "any employee employed in a bona fide executive, administrative, or professional capacity." For this exception to apply, the sergeants and lieutenants must perform "executive duties" and be paid "on a salary basis." See 29 C.F.R. § 541.1. Again, the City bears the burden of proving the applicability of the exception, and we construe the exemption narrowly against the employer. See Avery, 24 F.3d at 1340.

Although the lieutenants and sergeants do not dispute that they perform "executive duties," they contend that they do not meet the "salary basis" test because the City has not complied with the DOL's no-docking rule regarding unpaid disciplinary suspensions. See 29 C.F.R. § 541.118(a). Under this rule, an employer may only subject its salaried employees to deductions for (1) absence for a day or more for personal reasons other than sickness or accident, see id. § 541.118(a)(2); (2) absence for a

16

day or more for sickness or disability, if the deduction is made in accordance with a bona fide sick leave plan, see id. § 541.118(a)(3); (3) absence resulting from good faith penalization for infractions of safety rules of major significance, see id. § 541.118(a)(5); (4) absence for less than a day for personal reasons, sickness, or injury, if the deduction is made in accordance with an accrued leave plan, see id. § 541.5d(a); or (5) absence due to a budget-related furlough, see id. § 541.5d(b).

In its order, the district court found that the City's past suspensions of sergeants and lieutenants raised material questions of fact as to whether the City had violated the no-docking rule. Nonetheless, the district court granted summary judgment for the City because the court thought that the regulation was invalid as applied to the City; the district court believed that "[i]t could not have been Congress' intent that public accountability should be sacrificed by a public agency such as the City in order

17

for it to comply with the provisions of the FLSA exemptions." R3-76 at 30.

While this case has been pending on appeal, however, the Supreme Court has ruled that the no-docking rule is valid with regard to state and local governments. See Auer, __ U.S. __, 117 S. Ct. at 909-10. Although the City readily concedes that Auer has eviscerated the basis for the district court's holding on the executive exemption issue, it argues that the "window of corrections" established by DOL regulations allows municipalities to avoid violating the salary rule by reimbursing improperly-docked employees. See 29 C.F.R. § 541.118(a)(6) ("[W]here a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future."). In support of this argument, the City assures us that it has reimbursed the sergeants and lieutenants whom it has

18

previously docked, and it promises not to violate the no-docking rule in the future.  See Auer, __ U.S. __, 117 S. Ct. at 912; Davis v. City of Hollywood, 120 F.3d 1178, 1180-81 (11th Cir. 1997).  In response, Appellants vigorously contends that the City is not properly reimbursing several of the affected sergeants and lieutenants.

In light of the Supreme Court's intervening Auer decision and the inconclusiveness of the record with regard to reimbursement of any previously disciplined sergeants and lieutenants, we agree with Appellants that we should remand this case to the district court for further consideration.  Because we believe that the Appellants's contract claim presents difficult, important, and dispositive issues of Alabama law, however, we will hold this portion of the case in abeyance while we await the Supreme Court of Alabama's resolution of the questions we certify below.[4]

---

[4]If necessary after the Supreme Court of Alabama has resolved the certified questions, we will ask the district court on remand to determine whether Appellants have raised a material question of fact with regard to the City's docking of sergeants and lieutenants, given the City's claim to have availed itself of the docking rule's "window of corrections."

C. The State Law Claims

Beyond their FLSA claims, Appellants argue that they have contractual rights under Rule 3.1(c) and Act 856 to overtime compensation.  Unlike the pay-docking issue, which at most affects only the appellant sergeants and lieutenants, these claims would, if successful, result in overtime pay for all of the Appellants.  As this court has previously ruled, a personnel ordinance may establish a contract entitling local government employees to overtime pay.  See Kohlheim v. Glynn County, 915 F.2d 1473, 1479 (11th Cir. 1990).  Such a contract may give employees rights to overtime compensation beyond those required by the FLSA (i.e., the FLSA does not preempt state law contract provisions that are more generous than the FLSA demands).  See, e.g., Avery, 24 F.3d at 1347-48.

Before discussing the different issues presented by Appellants's claim under Act 856, we first dispense with Appellants's contractual claim under Rule 3.1(c).  In contrast to Act

856, which mandates that "all policemen" shall receive overtime pay for work in excess of 40 hours per week, Rule 3.1(c) requires only that "[a]ll employees non-exempt from the provisions of the Fair Labor Standards Act" shall receive overtime pay. On its face, therefore, Rule 3.1(c) incorporates the FLSA's exemptions into its guarantee of overtime compensation. Thus, Appellants can not have a greater contractual right to overtime pay under Rule 3.1(c) than they have under the FLSA. See Avery, 24 F.3d at 1348 (holding that an employee handbook incorporating the FLSA exemptions could not establish a greater contractual right to overtime compensation than the plaintiffs' right to such pay under the FLSA). As a result, the Appellants's claim for overtime compensation under Rule 3.1(c) has no more (or less) merit than their federal law FLSA claims discussed above.

Appellants's claim under Act 856 is much more difficult to resolve. In its arguments to this court, the City has not questioned that, if Act 856 is still valid law in Mobile County, then it has a

contractual obligation under the Act to pay all of the Appellants

overtime compensation for any time that they have worked in

excess of 40 hours per week.  The City, however, urges us to

affirm the district court's ruling that the Personnel Board repealed

Act 856 by implication when it enacted Rule 3.1(c).  Having

carefully considered the parties' contentions with regard to the

repeal issue, we face two difficult questions of Alabama law that

go to the heart of the legal relationship between Alabama's state

government and its county personnel boards.  Because we do not

wish to publish an opinion and judgment that, if relied upon by

parties and political units in Alabama, could interfere with

Alabama's constitutional system, or its policy regarding payment of

overtime compensation for Mobile employees, we therefore set out

these questions in some detail and certify them to the Supreme

Court of Alabama.[5]

---

[5]See <u>Blue Cross and Blue Shield of Alabama, Inc. v. Nielsen</u>, 116 F.3d 1406, 1413 (11th Cir. 1997) ("The final arbiter of state law is the state supreme court, which is another way of saying that Alabama law is what the Alabama Supreme Court says it is. . . .  Because the only authoritative voice on Alabama law is the

First, we are uncertain as to whether the Personnel Board has the power to repeal Act 856. Regarding this question, we have found a number of relevant statutory provisions and Alabama cases, yet we are not confident that any of these is dispositive. Under Act 470, the Personnel Board's rules have "the force and effect of law." Act 470 § IX(b). Applying this provision, the City argues that the Alabama legislature has granted the Personnel Board authority to repeal local acts such as Act 856.

Perhaps running against the City's position, Act 470's § XI requires the Mobile County Personnel Director to submit a "Pay Plan" that is "not inconsistent with such rate or rates as may otherwise in specific instances be fixed by law." This provision, however, by its terms only applies to the Personnel Director, who is an employee of the Personnel Board. Moreover, the Alabama courts long ago explicitly held that § XI does not limit the actions of the Personnel Board:

Alabama Supreme Court, it is axiomatic that that court is the best one to decide issues of Alabama law.") (citation omitted).

23

As we construe Section XI, it specifies certain facts and information the Director shall take into consideration in formulating his Pay Plan and the italicized words may confine his suggested pay plan to the rates of pay already "fixed by law," but even so, they in no wise limit or restrict the Personnel Board . . . .

Stone v. State ex rel. Goetz, 8 So. 2d 208, 209 (Ala. Civ. App. 1942); accord Stone v. State ex rel. O'Connor, 8 So. 210, 212 (Ala. Civ. App. 1942).

Additionally, § IX(c) of Act 470 states that the Personnel Board may enact rules "not inconsistent with the laws of the state." Although this provision may preclude the Personnel Board from repealing Act 470, it does not appear to require such a construction when read in the larger context of § IX as a whole. In part (b) of § IX, Act 470 declares that "Rules adopted under this section shall have the force and effect of law." In reading these portions of § IX together, we think that one could conclude that § IX gives the Personnel Board power to promulgate and repeal local law (§ IX(b)), but only if it is consistent with Alabama's

24

general (as opposed to "local") laws (§ IX(c)).[6]  Consistent with this possible view of § IX, the Alabama courts not only have construed § IX to give the Personnel Board sweeping regulatory power, see Jordan v. City of Mobile, 71 So. 2d 513, 519 (Ala. 1954), but also have gone so far as to state that, under § IX, the Personnel Board's rulemaking power is "co-extensive with that of the legislature," Mobile Fire Fighters Assoc. v. Personnel Board of Mobile County, No. 2960962,  (Ala. Civ. Ct. Feb. 13, 1998).  Thus, § IX(c) is an ambiguous

 provision that may or may not foreclose the Personnel Board from repealing a "local act" such as Act 856.[7]

Beyond these particular provisions of Act 470, the Alabama courts have, in several cases, discussed the limits of the Personnel Board's power under the Act, although they appear

---

[6]Alabama often makes a distinction between "specific" or "local" acts of its legislature applying only to a part of the state and "general" acts of its legislature applying to the whole state.  See, e.g., Buskey v. Mobile County Bd. of Registrars, 501 So. 2d 447, 452 (Ala. 1986).

[7]We note that, to the extent that § IX is ambiguous, the Alabama courts have repeatedly deferred to the Personnel Board's constructions of Act 470.  See Jordan, 71 So. 2d at 520; Mobile Fire Fighters.

never to have addressed directly the question of whether the Personnel Board can repeal local acts of the legislature. Repeatedly, Alabama courts have held that the Personnel Board may not enact any rule amending or subverting Act 470 itself, since Act 470 is the statute from which the Board derives its authority.[8]  For example, in <u>Personnel Board of Mobile County v. City of Mobile</u>, the Alabama Supreme Court ruled that the Personnel Board could not circumvent an amendment to Act 470 that removed the Personnel Board's authority to regulate the City's

---

[8]<u>See</u> <u>Mitchell v. Greenough</u>, 325 So. 2d 158, 160 (Ala. 1976) (holding that the Personnel Board cannot amend or circumvent Act 470); <u>Grant v. City of Mobile</u>, 282 So. 2d 291, 293-94 (Ala. 1973) (same); <u>Personnel Board of Mobile County v. City of Mobile</u>, 84 So. 2d 365, 369 (Ala. 1955) (holding that the Personnel Board could not circumvent an amendment to Act 470 that removed the Personnel Board's authority to regulate the City's employment of a police chief); <u>Jordan</u>, 71 So. 2d at 517-18, 520 (stating that the Personnel Board may not subvert or repeal Act 470 but holding that courts should defer to the Personnel Board's construction of Act 470); <u>Mobile County v. State ex rel. Farmer</u>, 3 So. 2d 435, 437 (Ala. Civ. App. 1941) (holding that the Personnel Board could not amend the state legislature's "Enabling Act," which the legislature passed in the same session as Act 470 and which amended Act 470);  <u>cf.</u> <u>Smith v. City of Pleasant Grove</u>, 672 So. 2d 501, 505-07 (Ala. 1995) (holding that a county personnel board, empowered by the state legislature to regulate "classified" but not "unclassified" types of employment, could not expand definition of "classified" to include common laborers, when common laborers were explicitly defined as "unclassified" employees in the statute giving the personnel board its regulatory power).

employment of a police chief.  <u>See</u> 84 So. 2d at 369. Applying these Alabama precedents, one could well conclude that the Personnel Board does not have the power to repeal or circumvent Act 856 because Act 856 amended Act 470.  If, by enacting Act 856, the Alabama legislature took away power from the Personnel Board (rather than simply writing a local-law labor regulation equivalent to one of the Board's rules), then the legislature in effect amended Act 470's grant of power to the Board, and the Board cannot repeal or amend this amendment to its founding statute.  <u>Cf.</u> <u>id.</u> at  369.

On the other hand, the Alabama Supreme Court's holding in <u>Freeman v. Purvis</u>, 400 So. 2d 389 (Ala. 1981), seems to suggest that, if Act 856 amended Act 470, it did so in a way that does not bind the Personnel Board.  In <u>Purvis</u>, the Alabama Supreme Court examined an act quite similar to Act 856; while Act 856 sets policemen's hours for overtime, Act 80-797 in <u>Purvis</u> established minimum salaries for deputy sheriffs.  In <u>Purvis</u>, the Personnel

Board argued, inter alia, that Act 80-797 violated the Alabama constitution because it improperly repealed Act 470.  The Alabama Supreme Court, however, held that Act 80-797 did not repeal Act 470 but rather "amended Act No. 470 by supplementation." Purvis, 400 So. 2d at 393.  Specifically, the Purvis court ruled that Act 80-797 supplemented the "minimum . . . rate" language of Act 470's § XI.  By analogy, then, Purvis would seem to indicate that Act 856 also amended Act 470 by supplementing § XI.  As we discussed above, and as the Alabama courts have previously held, however, § XI only concerns the Personnel Director, an employee of the Personnel Board, and "in no wise limit[s] or restrict[s] the Personnel Board." Goetz, 8 So. 2d at 209; accord O'Connor, 8 So. 210 2d at 212.  Thus, according to some established Alabama authorities, Act 856 would seem to have amended only a provision of Act 470 which the Personnel Board is free to disregard.

In sum, the issue of whether the Personnel Board has the power to repeal Act 856 presents a difficult and heretofore

apparently unsettled question of Alabama law. Because the answer to this question is dispositive of the patrol officers' (and perhaps also the sergeants' and lieutenants') claims in this case, and because we are hesitant to issue an opinion that, if relied upon by private persons or government officials in Alabama, might interfere with the fundamental relationship between Alabama's state legislature and its county personnel boards, we certify the following question to the Supreme Court of Alabama pursuant to Alabama Rule of Appellate Procedure 18:

> QUESTION ONE: DOES THE MOBILE COUNTY PERSONNEL BOARD HAVE THE POWER TO REPEAL OR OTHERWISE AMEND OR SUPPLANT LOCAL ACTS PASSED BY THE ALABAMA STATE LEGISLATURE SUCH AS 1969 ALA. LOCAL ACTS 856?

If the answer to this question is "yes," then we would ask the Supreme Court of Alabama to address the subsidiary question of whether the Personnel Board in fact did repeal Act 856 by enacting Rule 3.1(c). We would request instruction from the

Supreme Court of Alabama concerning this second question because it involves the juxtaposition of two well-established, but in this case perhaps contradictory, Alabama principles of statutory construction.

First, Alabama law clearly disfavors repeal by implication. In order to find implied repeal, Alabama courts require that two laws be "repugnant" or in such "conflict with each other" that repeal must be presumed. See, e.g., <u>Fletcher v. Tuscaloosa Fed. Sav. and Loan Ass'n.</u>, 314 So. 2d 51, 55 (Ala. 1975). Alabama law does not require, however, that a court accept any construction of a later statute that is technically consistent with a previous law. Instead, a court must look to the "legislative intent" underlying the latter act to determine whether there is a "reasonable construction" of the second statute that does not conflict with the first. See, e.g., <u>Sand Mountain Bank v. Albertville Nat'l Bank</u>, 442 So. 2d 13, 19 (Ala. 1983).[9] Applying this rule alone, we think that Rule 3.1(c) is

_____

[9]In <u>Fletcher</u>, for example, the Alabama Supreme Court found that a general banking/loan reform act implicitly repealed an

susceptible to two possible constructions: (1) Rule 3.1(c) simply mandates that all employees under the Personnel Board's jurisdiction comply with the overtime provisions of the FLSA; or (2) Rule 3.1(c), in the context of the whole body of the Personnel Board's rules and consistent with the principle of <u>expressio unius</u>, incorporates the FLSA's exemptions so that it not only requires overtime pay for non-FLSA-exempt employees but also bars overtime pay for FLSA-exempt employees. In other words, Rule 3.1(c) may be susceptible to both non-Act-856-repealing and Act-856-repealing interpretations.

If the first, non-repealing construction is "reasonable," then Alabama's law on implied repeal requires that a court adopt it so that both Act 856 and Rule 3.1(c) can be given continued effect. <u>See, e.g.</u>, <u>Sand Mountain Bank</u>, 442 So. 2d at 19. We are

---

earlier, more specific usury law, even though the two statutes could "be ascribed mutually exclusive fields of operation." <u>Id.</u> In reaching this conclusion, the <u>Fletcher</u> court looked not just to the explicit provisions of the two statutes but also to the "legislative intent" underlying the second act. <u>See</u> <u>id.</u> at 55–56.

uncertain, however, whether the non-repealing interpretation is "reasonable" given the Alabama courts' long-established principle of deference to contemporary construction. Under Alabama law, "contemporaneous construction" of a law is entitled to "great consideration." State v. Tuscaloosa Bldg. & Loan Ass'n, 161 So. 530, 534 (Ala. 1935). In choosing between competing constructions of a statute, Alabama courts consider "the contemporaneous construction placed upon [the statute] by the courts, by the officers whose duty it was to construe [it], and by the executive departments and the popular interpretation, as exemplified in practice for a number of years. . . ." State ex rel. Fowler v. Stone, 185 So. 404, 408 (Ala. 1938); cf., e.g., Fletcher, 314 So. 2d at 55 (finding implied repeal based on legislative intent); Sand Mountain, 442 So. 2d at 18 (explaining that in construing a statute to determine whether there has been an implied repeal, "a court must look not only to the language of the statute, but also to the purpose and object of the enactment and its

relation to other laws."). "When the law has contemporaneously been put into operation, and in doing so a construction has necessarily been put upon it, this construction, especially if followed for some considerable period, is entitled to great respect, as being very probably a true expression of the legislative purposes, and is not lightly to be overruled." Trammel v. Conner, 8 So. 495, 496 (Ala. 1890). Applying this principle, we see a variety of evidence in the record indicating that the Personnel Board has consistently construed and applied Rule 3.1(c) as incorporating the FLSA's exemptions to bar overtime payment for FLSA-exempt employees—thereby implicitly repealing Act 856.[10]

---

[10]For example, both past and present Personnel Directors for Mobile County have given testimony indicating that the Personnel Board has consistently construed Rule 3.1(c), since its adoption in 1986, as prohibiting overtime payment to FLSA-exempt employees. See Pl. Exh. E, ¶ 26, at 13 ("The Mobile County Personnel Board when it amended Rule 3.1(c), after Garcia, confirmed that exempt employees under the Fair Labor Standards Act would not be paid overtime . . . ."); R1-38 (same). Although Judge Kravitch questions the relevance of such evidence in her special concurrence, see post at __ n.5, the cases she cites are inapposite because the Personnel Director is not a "legislator" but rather an "executive." As "executive head of the [Personnel] Department," Act 470 § VIII, the Personnel Director must construe and implement the Personnel Board's enactments. Cf. State ex rel. Fowler, 185 So. at 408 (stating that Alabama courts defer to the contemporary construction of "the officers whose duty it was to construe [a statute]" and of "executive departments," as "exemplified in practice for a number of years").

Nonetheless, we are not confident as to whether such contemporary construction evidence may render an interpretation of a statute or rule so unreasonable as to overcome the Alabama courts' disfavor of implied repeal. Out of deference to the Supreme Court of Alabama, we do not wish to publish a federal court opinion that might, if relied upon by parties in Alabama, disrupt unnecessarily the long development of Alabama's principles of statutory construction. Therefore, we certify the following second question to the Supreme Court of Alabama:

> QUESTION TWO: IF THE MOBILE COUNTY PERSONNEL BOARD HAS THE POWER TO REPEAL ACT 856, DID THE BOARD IN FACT REPEAL ACT 856 BY IMPLICATION WHEN IT ENACTED RULE 3.1(c)?

The particular phrasing of the two certified questions is not intended to limit the Supreme Court of Alabama in its consideration of the various issues posed by the entire case as it perceives them to be. The entire record and the briefs of the

parties shall be transmitted to the Supreme Court of Alabama to assist its determination.

## III. CONCLUSION

By demonstrating that it has adopted a 14-day work period, the City has established that it is entitled to a 7(k) exemption. As a result, we AFFIRM the district court's ruling that the City need not pay overtime under the FLSA to the appellant patrol officers, sergeants, or lieutenants for up to 86 hours of work within one of its 14-day work periods. Because of the Supreme Court's intervening decision in Auer, however, we must REVERSE the district court's holding that the no-docking rule is invalid as applied to the City and its sergeants and lieutenants (who may work more than 86 hours per week). Because we believe that state law issues are dispositive of the case, especially with regard to the patrol officers, we hold the no-docking portion of the case in

abeyance while we await the Supreme Court of Alabama's resolution of the two CERTIFIED questions.

AFFIRMED IN PART, REVERSED IN PART, and CERTIFIED to the Supreme Court of Alabama.

KRAVITCH, Senior Circuit Judge, specially concurring:

I concur in the majority's resolution of appellants' federal-law claims based on the Fair Labor Standards Act, 29 U.S.C. §§ 201-209 (the "FLSA"), and appellants' state-law claim based on the Mobile County Personnel Board's Rule 3.1(c) ("Rule 3.1(c)"). I also join in the majority's decision to certify to the Alabama Supreme Court the issue of whether Rule 3.1(c) repealed 1969 Ala. Acts 856 ("Act 856"), a general law of local application that, by its terms, guarantees overtime compensation to all policemen employed by cities in Mobile County. Like the majority, I believe that we should turn to the Alabama Supreme Court, the ultimate arbiter of Alabama law, for guidance with regard to two heretofore unresolved questions: (1) whether the Personnel Board has the authority to repeal Act 856; and (2) assuming that the Personnel Board has such authority, whether Rule 3.1(c) implicitly repealed Act 856.

I write separately, however, because I disagree with two aspects of the majority's opinion. First, I do not believe that Freeman v. Purvis, 400 So.2d 389 (Ala. 1981), implies that the

Personnel Board has the authority to repeal Act 856. See infra

Part I. Second, I do not agree that "a variety of evidence in the

record" indicates that the Personnel Board contemporaneously

construed Rule 3.1(c) to constitute an implied repeal of Act 856.

See infra Part II.

I.

In Freeman v. Purvis, 400 So.2d 389 (Ala.

1981), the Personnel Board challenged two general

laws of local application that required deputy

sheriffs in Mobile County to be paid at least as

much as state troopers of corresponding rank.

See id. at 390 (citing 1976 Ala. Acts. 710 and

1980 Ala. Acts 797). The trial court ruled that

those state laws are valid and are binding on the

Personnel Board. See id. at 390-91. The Alabama

Supreme Court affirmed. Analyzing 1939 Ala.

Local Acts 470, the law that established the

Personnel Board, the Court explained:

It is true that the terms of Act No. 470 granted authority to the Board to approve both a classification of positions and a pay plan for them.  That pay plan, however, in the terms of Act No. 470,

> shall include for each class of positions, a minimum and a maximum rate not inconsistent with such rate or rates as may otherwise in specific instances be fixed by law. . . .

The provisions of Act No. 797 appear to have accomplished what that proviso contemplated when they fixed the minimums for the deputy sheriff class of positions.  Thus Act No. 797 amended Act No. 470 by supplementation without a conflict in its terms.

See id. at 393 (quoting 1939 Ala. Local Acts 470 § XI) (ellipsis in original).  According to the Freeman Court, therefore, any pay plan enacted by the Personnel Board must comply with the minimum and maximum rates established by state law.

Freeman provides no support for the proposition that the Personnel Board has the authority to repeal Act 856.  If the Personnel Board's enactment of a rule governing overtime

39

pay effectively constitutes the adoption of a pay

plan, then Freeman would indicate that the

Personnel Board lacks the authority to repeal Act

856.  Just as the Personnel Board, under Freeman,

must adhere to the minimum compensation levels

established for deputy sheriffs under Alabama

law, so here the Personnel Board would be bound

to comply with the overtime provisions of Act

856.[11]

---

[11] Despite the clarity of Freeman's holding, the majority attempts to graft onto the Freeman opinion certain language from two earlier, inapposite opinions by the Alabama Court of Appeals:  Stone v. State ex rel. O'Connor, 30 Ala.App. 500, 8 So.2d 210 (Ala. App. Ct. 1942), and Stone v. State ex rel. Goetz, 30 Ala.App. 489, 8 So.2d 208 (Ala. App. Ct. 1942).  In those cases, the court stated that the Personnel Board could enact pay plans at variance with local laws that were enacted in 1932, prior to the passage of Local Act 470.  In both cases, the court relied in part on the repeal clause of Local Act 470, which rendered void all inconsistent "laws or parts of laws heretofore enacted."  1939 Ala. Local Acts 470 § XXXVI (emphasis added).  See Stone, 30 Ala.App. at 502-03, 8 So.2d at 212; Goetz, 30 Ala.App. at 491, 8 So.2d at 209-210.

By contrast, in both the instant case and Freeman, the question is whether the Personnel Board may enact a pay plan that is inconsistent with a general law of local application enacted after the passage of Local Act 470. The Freeman Court answered this question in the negative, see 400 So.2d at 393 (quoting 1939 Ala. Local Acts 470 § XI), and affirmed the trial court's ruling that the Personnel Board was bound by the state laws governing minimum pay for deputy sheriffs.  Indeed, if the Personnel Board were free to disregard those laws, as the majority implies, then the Freeman Court would have dismissed the Personnel Board's suit for lack of controversy.  See Ex parte Blue Cross & Blue Shield of Ala., 582 So.2d 469, 474 (Ala. 1991).

40

Despite my disagreement with the majority's reading of <u>Freeman</u>, I concur in certifying to the Alabama Supreme Court the question of whether the Personnel Board has the authority to repeal Act 856. This important and heretofore unresolved issue is best left to the judgment of the Alabama Supreme Court.[12]

## II.

---

[12] Although no Alabama Supreme Court case directly addresses whether the Personnel Board has the power to repeal Act 856, <u>Freeman</u> and <u>Personnel Bd. of Mobile County v. City of Mobile</u>, 264 Ala. 56, 84 So.2d 365 (1955), arguably suggest that the Personnel Board lacks such power. The Personnel Board's authority to establish a rule regarding overtime pay appears to be based upon either the Personnel Board's specific authority to enact a pay plan, <u>see</u> 1939 Ala. Local Acts 470 § XI, <u>cited in</u> <u>Freeman</u>, 400 So.2d at 393, <u>or</u> the Personnel Board's general authority over the civil service system, <u>see</u> 1939 Local Acts 470 § VII, <u>cited in</u> <u>Personnel Bd.</u>, 264 Ala. at 58, 84 So.2d at 367. <u>Freeman</u> and <u>Personnel Bd.</u>, respectively, imply that an overtime rule enacted under either authority must comply with general laws of local application enacted after the Personnel Board was created. <u>See</u> <u>Freeman</u>, 400 So.2d at 393 (stating that the Personnel Board's pay plan must comply with 1980 Ala. Acts 797); <u>Personnel Bd.</u>, 264 Ala. at 61, 84 So.2d at 369 (rejecting the Personnel Board's challenge to 1953 Ala. Acts 370, which divested the Personnel Board of its power under Local Act 470 to control the employment of police chiefs); <u>see</u> <u>also</u> 1939 Ala. Local Acts 470 § IX(c) (stating that the Personnel Board may enact "any provisions relating to the Classified Service, <u>not inconsistent with the laws of the state</u>, which may be necessary or appropriate to give effect to the provisions and purposes of this Act") (emphasis added).

Assuming that the Personnel Board has the authority to repeal Act 856, the next question is whether Rule 3.1(c) implicitly repealed Act 856. "Repeal by implication is not favored.  It is only when two laws are so repugnant to or in conflict with each other that it must be presumed that the Legislature intended that the latter should repeal the former."  Fletcher v. Tuscaloosa Fed. Sav. and Loan Ass'n, 294 Ala. 173,  177, 314 So.2d 51, 55 (1975) (quoting City of Birmingham v. Southern Express Co., 164 Ala. 529, 538, 51 So. 159, 162 (1909)).  Thus, "[i]f under a reasonable construction it is possible to reconcile the acts, both will be given effect." Sand Mountain Bank v. Albertville Nat'l Bank, 442 So.2d 13, 19 (Ala. 1983).

Because it is an open question under Alabama law whether Rule 3.1(c) reasonably may be

42

construed to be in harmony with Act 856, I concur in the majority's decision to certify this question to the Alabama Supreme Court.[13]  I disagree, however, with the majority's statement that "a variety of evidence in the record" indicates that the Personnel Board

---

[13] One interpretation of Rule 3.1(c) that does not conflict with Act 856 is that the Personnel Board enacted Rule 3.1(c) simply to ensure Mobile County agencies' compliance with the FLSA.  See City of Birmingham v. Personnel Bd. of Jefferson County, 464 So.2d 100, 103 (Ala. Civ. App. 1984) (stating that a personnel board can institute mandamus proceedings to compel public agencies to comply with its rules).  In light of the FLSA's complicated set of exemptions for public employees, see 29 U.S.C. §§ 207(j)-(k),(n), 213(a)(1), (b)(20), the Personnel Board may have believed that centralizing control over agencies' overtime policies would help avoid expensive FLSA litigation, see 29 U.S.C. § 216(b) (stating that a public agency found to have violated FLSA's overtime requirements is liable to its employees "in the amount of . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages," plus attorney's fees and costs).  Under this interpretation, Rule 3.1(c) simply ensures that agencies pay overtime to non-exempt employees; it does not prohibit agencies from providing overtime pay to exempt employees if any provision of state law, such as Act 856, so requires.

This arguable construction of Rule 3.1(c) appears to be consistent with Rule 3.1(c)'s "language" and "relation to other laws."  Sand Mountain Bank, 442 So.2d at 18.  For example, the fact that the Personnel Board easily could have written Rule 3.1(c) to bar all exempt employees from receiving overtime pay, but chose not to do so, may indicate that it did not intend to repeal Act 856.  See Anniston Urologic Assocs., P.C. v. Kline, 689 So.2d 54, 59 (Ala. 1997) ("If [repeal of the prior enactment] had been the intent of the Legislature, it could have made, and now should make, its wishes clearly known."); see also Fletcher, 294 Ala. at 177, 314 So.2d at 55  ("Implied repeal is essentially a question of determining the legislative intent as expressed in the statutes.") (internal quotations omitted).  Likewise, the fact that the Personnel Board enacted Rule 3.1(c) on April 15, 1986, the same day that the FLSA's overtime protections became effective as to non-exempt employees of local public agencies, see Fair Labor Standards Amendments of 1985, Pub. L. No. 99-150, § 2(c)(1), 99 Stat. 787, 788-89, may suggest that Rule 3.1(c) was not intended to affect exempt employees' rights to overtime pay under state law.

It is unclear, however, whether this harmonious interpretation of Rule 3.1(c) and Act 856 is "reasonable."  Sand Mountain Bank, 442 So.2d at 19.  Like the majority, I believe that resolution of this question is best left to the judgment of the Alabama Supreme Court.

contemporaneously construed Rule 3.1(c) to

constitute an implied repeal of Act 856.  Even if

the Personnel Board's contemporaneous

construction of Rule 3.1(c) were relevant,[14] I

find no record evidence to suggest that the

Personnel Board ever prohibited the various

agencies within its purview from providing exempt

employees with overtime pay where otherwise

authorized by state law.[15]

---

[14] The majority has not cited, nor have I found, any Alabama authority indicating that a court's inquiry into implied repeal may involve examining an implementing entity's "contemporaneous construction" of the latter law.  Cf. State ex rel. Fowler v. Stone, 237 Ala. 78, 185 So. 404 (1938) (not involving implied repeal), cited in Maj. Op.; State v. Tuscaloosa Building & Loan Ass'n, 230 Ala. 476, 161 So. 530 (1935) (same), cited in Maj. Op.; Trammel v. Connor, 91 Ala. 398, 8 So. 495 (1890) (same), cited in Maj. Op.

[15] The majority cites a sentence from the affidavit testimony of Bernard Richardson, the Personnel Director in 1986.  See Pl. Exh. E, ¶ 26, at 13 (stating that the Personnel Board, in enacting Rule 3.1(c), "confirmed that exempt employees under the Fair Labor Standards Act would not be paid overtime").  This testimony, however, does not bear on the contemporaneous construction of Rule 3.1(c).  The Personnel Board, not the Personnel Director, is endowed with the specific authority to enforce Personnel Board rules, see 1939 Ala. Local Acts § VII(b)(4), as amended by 1976 Ala. Acts 684 § 2, and Richardson's testimony does not indicate that the Personnel Board ever sought to prohibit local agencies from complying with Act 856.  Likewise, Richardson's testimony does not suggest that the Personnel Board ever intended that Rule 3.1(c) repeal Act 856.  Not only is ex post opinion testimony inadmissible to establish the intent of a legislative body, see James v. Todd, 103 So.2d 19, 28-29 (Ala. 1957) (upholding the trial court's decision to exclude testimony by members of the Alabama Legislature concerning the Legislature's intent in enacting 1955 Ala. Acts

III.

Although I disagree with two elements of the majority opinion, I otherwise fully concur in its reasoning and result.

---

570); <u>see</u> <u>also</u> <u>Hamilton v. Autauga County</u>, 289 Ala. 419, 426, 268 So.2d 30, 36 (Ala. 1972), but also Richardson was not even a <u>member</u> of the Personnel Board and thus is in no position to speculate on the Board's intention. Indeed, Richardson's testimony, taken as a whole, indicates that Rule 3.1(c) was intended simply to enforce the FLSA's overtime provisions for non-exempt employees. <u>See</u> Pl. Exh. E, ¶ 25, at 12 ("The sole purpose of amending Rule 3.1(c) was to express, as a policy statement of the Mobile County Personnel Board, that 29 U.S.C. § 207(a)(1) would be implemented.").

The majority also cites affidavit testimony of the current Personnel Director, Shannon Weekley, <u>see</u> R1-38, but her testimony is flawed for the same reasons as Richardson's. Moreover, Weekley, who became Personnel Director in 1993, has no insight into the "contemporaneous construction" of Rule 3.1(c) when it was enacted in 1986.

45